# EXHIBIT A

Letters of Office – Decedent's Estate                                    CCP 0415

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – PROBATE DIVISION

Estate of

George V LaVenture

Deceased

Case Number:     2022P006442

Docket:

Page:

## LETTERS OF OFFICE – DECEDENT'S ESTATE

BRIGITTE FAUTEUX   has been appointed   Independent  Executor, of the estate of  George V LaVenture  , deceased, who died  Saturday, 06/25/2022   , and is authorized to take possession of and collect the estate of the decedent and to all acts required by law.

No Assets To Leave The State of Illinois Without Prior Court Approval.

LS

Witness:          10/20/2022
                 IRIS Y MARTINEZ
               Clerk of the Circuit Court

## CERTIFICATE

I certify that this is a copy of the letters of office now in force in this estate. .

Theresa Grubbs at Probate Division

Witness:     Wednesday, 10/26/2022

IRIS Y MARTINEZ
Clerk of Court

IRIS Y MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Printed:  10/26/2022 12:01 PM

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – PROBATE DIVISION

)
)
)       General Order
)
)

### GENERAL ORDER
### CONCERNING LETTERS OF OFFICE

This Order is entered in response to reports of third party refusal to accept letters of office for lack of a raised seal.

**IT IS HEREBY ORDERED THAT EFFECTIVE IMMEDIATELY:**

1. The Clerk of the Circuit Court of Cook County (the "Clerk") no longer issues raised seals on letters of office. The Clerk's office now exclusively uses electronic seals. Electronic seals shall be sufficient evidence of the validity of letters of office. Third parties shall rely on this General Order and accept the electronic seal affixed to letters of office without a raised seal.

2. Any third party's refusal to accept letters of office for lack of a raised seal will subject them to appear before the court via motion or petition seeking reimbursement for the costs parties incur as a result of the third party's refusal to accept letters of office with an electronic seal, including attorney's fees.

3. Attorneys and estate representatives may present this General Order to any third party who refuses to accept letters of office for lack of a raised seal.

**Dated:** September 12, 2022      **Enter:** _____

Daniel B. Malone
Presiding Judge – Probate Division

```
E N T E R E D
Judge Daniel B. Malone-2012

SEP 1 2 2022

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
```

# EXHIBIT B

# COVER LETTER

07/06/2022

TO: Prudential Benefit Center
C/O Stephanie

RE: GEORGE V LAVENTURE

TICKET # 2682427

07/06/2022

RE: George V. LaVenture

To: Prudential Benefit Center
 C/O Stephanie

Hello, I am attaching the following items regarding George V. LaVenture:

- Copy of license
- Copy of Trust
- Copy of Pour Over Will
- Copy of Divorce Decree

Last  4 digits of SS#REDACTED

D.O.B.REDACTED

Date of Divorce 02/11/2021

My contact info as Trustee of The George V. LaVenture Trust:

Brigitte Fauteux
30 Loomis St. North Granby, CT 06060
860-212-4874

Thank you for your help.

Sincerely,
Brigitte Fauteux

NOTE* -I have not recieved the death certificates yet
- I included George's Divorce Decree

# ILLINOIS

Jesse White • Secretary of State

## DRIVER'S LICENSE

USA

4d LIC No REDACTED

3 DOB REDACTED

4b EXP: 07/03/2023    4a ISS: 02/18/2022

1 LAVENTURE
2 GEORGE VINCENT
8 5345 LAWN AVE
WESTERN SPRINGS IL 60558

9 CLASS DM    9a END: NONE
12 REST NONE

15 SEX: M    16 HGT: 5'-08"
17 WGT: 200 lbs    18 EYES: BLUE    TYPE: COR

DONOR

5 DD 20220218251LD3998

# LIVING TRUST AGREEMENT

### Of

### George V. LaVenture
**Grantor**

### And

### George V. LaVenture
**Trustee**

### Brigitte Fauteux
**Successor Trustee**

BE IT KNOWN BY ALL, THE ABOVE INDIVIDUAL HAS CREATED
A REVOCABLE LIVING TRUST KNOWN AS THE

# George V. LaVenture Trust

Trust Address:
5345 Lawn Ave.
Western Springs, Illinois 60558

Created on April 5, 2022

## A PRIVATE TRUST AGREEMENT OF THE ABOVE-NAMED PARTY

## LIVING TRUST DECLARATION AND AGREEMENT

**THIS DECLARATION AND TRUST AGREEMENT** is made this date, April 5, 2022, by George V. LaVenture, acting both as Grantor and as Trustee. The Grantor hereby declares the establishment of a Living Trust known as the George V. LaVenture Trust hereafter referred to as the "Trust." The Grantor hereby revokes any prior will(s), codicils thereto and Revocable Living Trusts that the Grantor may have enacted in the past.

The Trust tax identification number is the Grantor's social security number.

### Statement of Purpose .

The Grantor's intent with this instrument are as follows, but are not limited to: (a) avoid probate in all jurisdictions; (b) insure bequeathment to the named Second Beneficiary(s) and the recipient(s) of specific bequests listed in the "Bequeath of Special Gifts"; (c) exclude all other persons and/or entities not listed as a Secondary Beneficiary; (d) reduce taxes; (e) reduce expenses; (f) avoid and settle conflicts between Secondary Beneficiaries; (g) control gifts and bequeathment to Secondary Beneficiary(s); (h) avoid creditors; (i) provide specific instructions to Trustees and Successor Trustees; (j) exclude future spouses from Trust interest; (k) comport with any and all statutes in any jurisdiction and (l) provide comfort and care to the Grantor.

### Section 1. Transfer in Trust

The Grantor has transferred or will transfer, to the Trustee, without consideration, the business and personal assets and properties described in schedules which are referred to as "Schedule A" and the "Memorandum of Disposition of Personal Effects," which are or will be attached hereto. The properties transferred, unless otherwise designated, shall be beneficially owned by the Grantor. The Trustee hereby agrees to hold, administer and distribute, in accordance with the provisions hereof, the property described in said Schedules and any other property acceptable to the Trustee which anyone may desire to add to the Trust. All property, initially or hereafter transferred to the Trust in any manner, including property passing to the Trust by Grantor's Will, hereafter is termed the "Trust Estate."

### Section 2. Power to Amend and Revoke

I. During the lifetime of the Grantor, the Trust may be revoked in whole or in part by the Grantor. The Grantor also reserves the right to amend this Trust in whole or in part at any time, during his/her lifetime.

II. Any amendment or revocation shall take effect when written notice thereof is received by the Trustee, but any such amendment or revocation shall not affect any lawful act of the Trustee prior to receipt by the Trustee of such notice.

III. If the Grantor becomes incapacitated, any property of the Grantor shall be held irrevocably in the Trust until and if, said Grantor recovers from said incapacitated condition.

IV. After the Grantor has died, the Trust shall continue as or become an irrevocable Trust, to be administered and distributed as set forth herein. On the death of the Grantor, the Trust may not be amended, revoked or terminated, other than by disposition of the Trust property to the Secondary Beneficiaries according to the terms stated herein.

V. While the Grantor is alive, the Grantor shall have full authority, in his or her discretion, to sell, convey or mortgage property in the Grantor's own name, without disclosing the Grantor's capacity as Trustee of this Trust. Any such sale or conveyance of property in accordance with this provision shall be considered as and shall cause a partial revocation of the Trust with respect to the property so conveyed or sold and shall be sufficient to remove said property from the Trust.

## Section 3. Distributions During Grantor's Lifetime

I. The Trustee shall pay to or apply for the benefit of the Grantor during his or her lifetime in monthly or other convenient installments, but not less frequently than quarter-annually, the entire net income of the Trust.

II. The Trustee shall pay to the Grantor as directed from time to time.

III. If at any time, either in the Trustee's discretion or as certified in writing by two licensed physicians, the Grantor has become physically or mentally incapacitated, whether or not a court of competent jurisdiction has declared him or her incompetent, mentally ill or in need of a conservator, the Trustee shall pay to or apply for the benefit of the incapacitated Grantor the amounts of net income and principal necessary in the Trustee's discretion for the proper health and support of the incapacitated Grantor in accordance with the Grantor's accustomed manner of living at the date of this Instrument, until the incapacitated Grantor, either in the Trustee's discretion or as certified by two licensed physicians is again able to manage his or her own affairs or until the death of the Grantor. Furthermore, during any such period of incapacity, the Trustee, in such Trustee's sole judgment and without liability is specifically directed to make such distributions as are necessary to carry out any plan or pattern of family and charitable gifts.

IV. In providing income and or principal to the Grantor when incapacitated, the Trustee shall exercise in a liberal manner the power to invade principal of the Trust and the rights of the Secondary Beneficiaries shall be considered of secondary importance.

V. The Trustee shall, from time to time, pay to or apply for the benefit of any of the Grantor's minor children so much of the principal of the Trust, up to the whole thereof, as the Trustee, in his/her/its sole discretion, deems necessary or advisable for such Beneficiary's proper support, maintenance, health and education. In exercising the discretions conferred herein, the Trustee may pay more to or apply more for some Beneficiaries than others and may make payments to or applications of benefits for one or more Beneficiaries to the exclusion of others, if the Trustee deems it necessary or appropriate in light of the circumstances, the size of the Trust Estate, the probable future needs of the Beneficiaries and any income or other resources of the Beneficiary outside of the Trust known to the Trustee. Any payment or application of benefits under this Paragraph shall be charged against the Trust as a whole, rather than against the ultimate distribution share of any Beneficiary to whom or for whose benefit the payment is made.

## Section 4. Taxes, Expenses and Provisions After Death of Grantor

I. Upon the death of the Grantor, the Deceased Grantor's personal representative shall payout of the Deceased Grantor's residual estate, the estate and inheritance taxes, including interest and penalties attributable to the Grantor's estate arising because of his or her death and the last illness and funeral expenses of the Deceased Grantor, attorneys' fees and other costs incurred in administering the Deceased Grantor's estate. Any payment for estate or inheritance taxes that cannot be paid from the residual estate shall be charged to and paid from the Trust. Payments for last illness, funeral and other administration costs shall be charged first to and paid from first the residual estate and then secondly from the Trust.

II. All other provisions hereof to the contrary notwithstanding, unless no other funds or properties of any kind from any source are available for such purposes, no "restricted proceeds," as hereinafter defined, shall be either directly or indirectly:

    A. Distribute to or for the benefit of the Deceased Grantor's executors or the Deceased Grantor's probate estate; or

    B. Used to pay any obligations of the Deceased Grantor's estate.

    C. The term "restricted proceeds" means: (1) All qualified plan, individual retirement account or similar benefits that are received or receivable by any Trustee hereunder that, if paid solely to a

Beneficiary "other than the executor" of the Deceased Grantor's estate, would be eligible for exclusion from estate tax under Sections 2039(c) or 2039(e) of the Code pursuant to the transition rules in Sections 525(b)(2) through 525(b)(4) of the Tax Reform Act of 1984 as amended; and (2) All proceeds of insurance on the Deceased Grantor's life except to the extent the Trustee(s) determine, in his/her/its sole discretion, to make such payments out of such proceeds.

D. However, restricted proceeds shall not include any qualified plan or similar death benefits that would not in fact be excluded from the Deceased Grantor's gross estate under the applicable subsection of section 2039 of the Code (even though such benefits were receivable by a Beneficiary other than the Deceased Grantor's executor). Furthermore, this restriction shall not prohibit the use of restricted proceeds to buy assets from or make loans to the Deceased Grantor's estate in accordance with the provisions of this Instrument. Notwithstanding the foregoing, however, under no circumstances shall any borrowing by the Deceased Grantor's estate (whether from a recipient of restricted proceeds or otherwise) be assumed, paid or otherwise extinguished by any recipient of any restricted proceeds.

## Section 5. Named Secondary Beneficiary

I. The Grantor hereby directs that the following named person shall be the Secondary or Remainder Beneficiary to the Trust and that said Secondary Beneficiary shall be entitled to beneficial interests in such amounts as indicated below:

100% of beneficial interest to Daniel A. Fauteux

## Section 6. Distributions to Secondary Beneficiaries

I. Upon the death of the Grantor, the Trustee shall pay any applicable taxes, debts and expenses of the Grantor.

II. Next, the Trustee is to begin outright distributions of all principal and any accrued income of the combined assets of the Trust, free of Trust, to the Secondary Beneficiaries named in the previous Section or who may have been added later. When distributions are made to Secondary Beneficiaries, they shall begin as soon as is practical after meeting the requirements of Paragraphs I above and III below. The Trustee shall accomplish this by dividing the Trust Estate into as many shares as there are Secondary Beneficiaries. Each such divided share shall contain the appropriate share or percentage of the Trust Estate as specified in the "Named Secondary Beneficiary" Section of this Instrument. Once the shares are so divided, the Trustee shall then determine the best method of liquidating and distributing the Trust Estate. Upon the death of a Secondary Beneficiary who otherwise would have been a Secondary Beneficiary of this Trust, any allocation of the Trust Estate that would otherwise have inured to the benefit of said deceased Secondary Beneficiary shall be distributed to his or her issue, per stirpes. If such deceased Secondary Beneficiary has no issue, then such allocation of the Trust Estate shall be distributed equally to the other Secondary Beneficiaries of this Trust, where possible. Where not possible to distribute to the other Secondary Beneficiaries, the Trustee shall distribute said deceased Secondary Beneficiary's share according to the laws of intestacy of the State of domicile of this Trust.

III. The share of any issue of a Secondary Beneficiary who is under the age of twenty-five (25) at the time of the distribution of the estate shall be held in a Trust or in a separate and distinct share of the Trust and administered as followed:

A. The Trustee may use and expend or apply so much or all of first, the income and second, the principal of the Trusts hereby created for the benefit of a Beneficiary hereof as the Trustee determines necessary or advisable and in such reasonable manner as the Trustee sees fit, to provide for the health, reasonable comfort, education and support of the Beneficiary for whom such share is being held.

B. Assets to be distributed upon the following schedule:

1. Installment one of 1/2 of beneficial Trust interest payable to the named Secondary Beneficiary(s) as shown above and according to Paragraph I above upon the attainment of age 25.

2. The remainder of beneficial Trust interest payable to the named Secondary Beneficiary(s) as shown above and according to Paragraph I above upon the attainment of age 30.

If the Secondary Beneficiary(s) has attained an age shown above and are subsequently entitled to a distribution, the amount shall be paid accordingly and with future installments, if need be, to be paid according to schedule.

IV. In the event a named Secondary Beneficiary is for any reason unable or unwilling to take any portion of his or her share of the Trust, then such portion shall be distributed to the living descendants of said Beneficiary the same as if said Beneficiary was deceased.

V. Notwithstanding any of the foregoing provisions (except those provisions relating to the rule against perpetuities and payment of estate taxes, death taxes and payment of costs of administration), the Trustee of each Trust hereunder, other than any who is also a present or contingent Beneficiary of that Trust (or Grantor or donor as to any irrevocable gift made to that Trust), shall have the power to postpone any distribution of income or principal (including distributions pursuant to the exercise of a right of withdrawal) otherwise required to be made from that Trust to anyone or more of its Beneficiaries upon or after the Beneficiary's exercise of withdrawal right or attainment of a specified age or the death of a third person (and to postpone to that extent the termination of such Trust which might otherwise be required) if such Trustee in his/her/its sole but reasonably exercised discretion, determine that, in the view of the Grantor's apparent overall original intent, there is a compelling reason to postpone such distribution, including, without limitation, a serious tax or other disadvantage to any Beneficiary (or his family) if such distribution were made, a Beneficiary's serious disability, a pending divorce, addiction, potential or pending creditor claims (possibly relating to such distributions) or similar substantial cause. Any such postponement of distribution may be continued by such Trustee, in whole or in part, from time to time, up to and including the entire lifetime of the Beneficiary.

A. While such postponement continues, all the other provisions previously applicable to such share or Trust shall continue in effect with such Beneficiary as primary Beneficiary of such withheld income or principal except that:

1. Any power of appointment previously applicable to the otherwise distributable principal shall be exercisable only with the approval of such Trustee; and

2. Such Beneficiary shall only receive distribution from time to time of such amounts from such principal and the income there from as such Trustee(s), in their sole discretion, deem appropriate in the best interests of such Beneficiary; and

3. Any income not distributed shall be accumulated and added to principal.

VI. If at any time before full distribution of the Trust Estate, all the Grantor's issue is deceased and no other disposition of the property is directed by this Instrument, the Trust Estate or the portion of it then remaining shall thereupon be distributed, free from Trust, according to the laws of intestacy of the state of domicile then in effect.

VII. Whenever used herein, the terms "issue," "child," "children" and "descendants" include adopted issue, adopted child, adopted children and dependents, as well as natural issue, natural child, natural children, natural descendants and include descendants of adopted issue, adopted child, adopted children and adopted descendants. Provided, however, adopted issue who are also natural issue shall take their share of the Trust Estate only in one capacity, such capacity being the one that grants to such issue the larger share. Where applicable, the masculine includes the feminine and vice versa and the neuter includes the masculine or the feminine and vice versa. Where applicable, the singular includes the plural and vice versa.

## Section 7. Handicapped Beneficiaries

I. Any Secondary Beneficiary who is determined by a court of competent jurisdiction to be incompetent shall not have any rights of a Beneficiary with respect to the Trust or their share or portion thereof. The Trustee shall hold and maintain such incompetent Secondary Beneficiary's share of the Trust and shall, in the Trustee's sole discretion, distribute for and provide for such Beneficiary as provided for below in this Section of the Instrument.

II. Notwithstanding the foregoing, any Secondary Beneficiary who is diagnosed for the purposes of governmental benefits as being not competent or as being disabled and who shall be entitled to governmental support and benefits by reason of such incompetence or disability, shall cease to be a Beneficiary of this Trust if any share or portion of the principal or income of the Trust shall become subject to the claims of any governmental agency for costs, benefits, fees or charges.

III. The portion of the Trust Estate which absent the provisions of this Section, would have been the share of such incompetent or handicapped person shall be retained in Trust for as long as that individual lives. The Trustee, at the sole discretion of the Trustee, may utilize such funds for the incompetent individual to supplement the support received by said individual from governmental benefits. If said incompetent individual is not eligible for any governmental benefits, the Trustee shall provide for said individual's health and support in any manner that the Trustee, in his/her/its sole discretion, deems advisable. Said provision for the health and support of said incompetent individual shall be made only from that portion of the Trust Estate that is being held for said individual.

IV. If such individual who has been receiving governmental benefits, recovers from incompetence or disability and is no longer eligible for aid from any governmental agency, including costs, benefits, fees or charges, such individual shall be reinstated as a Secondary Beneficiary after sixty (60) days from such recovery and the allocation and distribution provisions as stated elsewhere herein shall apply to that portion of the Trust Estate which is held by the Trustee subject to the provisions of this Section.

V. Upon the death of an incompetent individual who otherwise would have been a Secondary Beneficiary of this Trust, any allocation of the Trust Estate which would otherwise have inured to the benefit of said incompetent individual shall be distributed to his or her issue, per stirpes. If such incompetent individual shall have no issue, then such allocation of the Trust Estate shall be distributed equally to the other Secondary Beneficiaries of this Trust, where possible. Where not possible to distribute to the other Secondary Beneficiaries, the Trustee shall distribute said incompetent individual's share according to the laws of intestacy of the State of domicile of this Trust.

## Section 8. Government Assistance and Medicaid Planning

I. If at any time the Grantor becomes incapacitated, the Trustee shall have the power to deal with governmental agencies and to make applications for, receive and administer benefits on behalf of the Grantor, including but not limited to, Social Security, Medicare, Medicaid, Supplemental Security Income, In-Home Support Services and any other government resources and community support services available to the elderly or incapacitated. The Trustee shall also cooperate in government assistance and Medicaid planning initiated by the Grantor's Attorney-in-Fact appointed under a Power of Attorney or, if none, with any Personal Representative that may be appointed by a court of competent jurisdiction. Such planning shall include, but not necessarily limited to. The power and authority to:

A. Transfer ownership of the assets of the Trust Estate;

B. Make home improvements and additions to the family residence;

C. Payoff, partly or in full, the encumbrance, if any, on the family residence;

D. Purchase a family residence if the Grantor does not own one;

E.  Purchase a more expensive family residence;

F.  Purchase an annuity under the guidelines provided by RCFA Transmittal No. 64 or any successor guidelines issued by the Centers for Medicare and Medicaid Services or similar government agency. The Trustee may purchase annuities for the Grantor's benefit, including annuities which, once annuitized, provide for payments to the Grantor over the Grantor's life expectancy as determined by the then current Life Expectancy Table used by the State of Illinois for Medicaid asset valuation purposes. The Trustee may also determine the Beneficiary, including the Grantor's agent or any successor agent, of any benefits available from such annuity upon the death of the Grantor, in the agent's sole discretion;

G.  Make gifts as directed by the incapacitated Grantor's Attorney-in-Fact;

H.  Make payments under any care contract negotiated by the incapacitated Grantor's Attorney-in-Fact; and

I.  Make payments as generally suggested as part of a "Spenddown" program by the incapacitated Grantor's Attorney-in-Fact.

II.  In exercising the above powers, the Trustee shall take into consideration that the primary concern shall be for the welfare of the Grantor and all government assistance and Medicaid Planning shall be of secondary importance to the Grantor's welfare.

### Section 9. Spendthrift Provisions

I. Except as otherwise provided herein, neither the principal of any Trust created hereunder nor the income therefrom while in the hands of the Trustee, shall be subject to assignment, alienation, pledge, attachment, execution or claims of creditors or any Beneficiary or Beneficiaries whomsoever through legal process, bankruptcy, operation of law or otherwise. Any attempted sale, assignment, alienation, pledge or attachment of the principal or income held in any Trust hereunder shall be null and void and shall not be recognized under any circumstances by Trustee.

II. In the event of any attempted sale, assignment, alienation, pledge, attachment, execution or claim resulting from an act of a Beneficiary or Beneficiaries, voluntarily, involuntarily, by operation of law, by bankruptcy or otherwise with respect to the principal or income of the Trust, the Trustee is authorized to withhold from such Beneficiary or Beneficiaries all or part of any distribution otherwise payable hereunder to such Beneficiary or Beneficiaries until such attempted anticipation, voluntary or involuntary transfer or lien is completely removed, during which time Trustee may apply such distribution or any part thereof, for the use and benefit of such Beneficiary or Beneficiaries in such amount or amounts and in such manner as the Trustee, in the Trustee's sole discretion, may determine is necessary for such Beneficiary's health, maintenance and welfare, taking into consideration all financial resources of which the Trustee has actual knowledge, provided however, that this paragraph shall not prevent the Trustee from making distributions of income required pursuant to the terms of any Trust created hereunder if any portion thereof qualifies for the Federal Estate Tax marital deduction.

### Section 10. Trustee Appointments

I. The following people will act as the Trustee in the following order of succession:

FIRST: George V. LaVenture

SECOND: Brigitte Fauteux of North Granby, Connecticut shall be Successor Trustee for the Trust and shall automatically be elevated to serve in the capacity of Trustee upon the death or incapacitation of the above-named Trustee. Any Successor Trustee shall succeed as Trustee with like effect as though originally

named in this Instrument as such. All authority and powers conferred upon the original Trustee hereunder shall pass to any Successor Trustee.

THIRD: Daniel Fauteux of North Granby, Connecticut shall be Successor Trustee for the Trust and shall automatically be elevated to serve in the capacity of Trustee upon the death or incapacitation of both of the above-named Successor Trustees. Any Successor Trustee shall succeed as Trustee with like effect as though originally named in this Instrument as such. All authority and powers conferred upon the original Trustee hereunder shall pass to any Successor Trustee.

    A. The Grantor binds his/her heirs and the Beneficiaries to the Trustee and Successor Trustee appointment listed above and he/she separately indicates this binding by signature on a statement in Exhibit 1, attached hereto.

II. The Trustee(s) shall be vested with full power to operate any Trusts created under the terms of this Agreement and under the terms of any other agreements that may be added. Any Trustee(s), other than the Grantor, shall have the full responsibility of a fiduciary in regard to the beneficial interests of the Beneficiaries and the principal of the Trust. Such Trustee(s) are required at all times to act in the best interests of the Trust and its Beneficiaries and must seek to expand and preserve the Trust principal while it is under said Trustee's control. Under no circumstances shall the Trustee(s), unless he or she is a Beneficiary(s), make personal use of Trust principal. A Trustee(s) shall be entitled to his/her/its regular fee, as published and in force, from time to time for acting as Trustee. Said fees shall be in keeping with the normal and customary fees for Trustee(s) in the same geographical area as that of the Trust(s) created herein.

III. The Trustee may disclaim, release or restrict the scope of any power held in connection with any Trust, including any distributive or administrative power, whether such power is expressly granted or implied by law, by a written instrument specifying the power to be disclaimed, release or restricted and the nature of any such restriction. A Limited Trustee shall exercise all powers disclaimed or released. If no Limited Trustee is effectively designated by this instrument, one shall be appointed by the County having jurisdiction of the Trust upon the application of any interested party.

IV. In all cases, references in this Agreement to a "Trustee" shall be construed to mean any or all Trustee(s) that may be appointed, whether one or more in number.

V. Whenever more than two Trustee(s) (also referred to a Co-Trustees) are designated to act concurrently, a majority of the Co-Trustees, whether individual or corporate, shall have the power to make any provision, undertake any action or execute any documents affecting the Trust created herein, but dissenting or non-assenting Co-Trustee shall not be responsible for any action taken by the majority pursuant to such decision. Before or after the death of Grantor, if only two individual Co-Trustees are in office, they must try to act unanimously, provided, however, the Co-Trustees may form joint savings, checking or investment accounts that require only one Trustee's signature to effect transactions for such an account. If both an individual and a Corporate Trustee are in office, the determination of the individual Trustee shall be binding. If there are any disagreements between Co-Trustees, a simple game of chance shall decide the course of action in which the disagreement pertains. The winner of the game of chance shall decide the course of action to be taken with the losing Trustee acquiescing to such action.

VI. Any Trustee may from time-to-time delegate to one (1) or more of the remaining Trustee(s) any powers, duties or discretion. Every such delegation shall be made by a writing delivered to the delegate or delegates and shall remain effective for the time therein specified or until earlier revocation by writing similarly delivered. Everyone dealing with the Trustee(s) shall be absolutely protected in relying upon the certification of any Trustee(s) as to who first are the Trustee(s) for the time being acting and as to the extent of their authority by reason of any delegation or otherwise.

VII. If any Trustee(s) resigns, ceases to exist or is terminated as is herein provided for, any Successor Trustee herein named shall automatically be elevated to the position of Trustee. If there is no Successor Trustee herein named or if said Successor Trustee is not available to serve for any reason, a majority of the

Beneficiaries shall select a Successor. If a Successor Trustee is chosen by the Secondary Beneficiaries, such Trustee must be independent of all said Beneficiaries. The Trustee may choose a competent Successor Trustee to replace itself, should any Trustee decide to resign. Any Successor Trustee chosen by the Trustee in such a case must be independent of the Beneficiaries.

VIII. The Beneficiaries, as represented by a majority of the current beneficial interests, may terminate any Trustee for reasons of just cause, as defined below:

    A. Legal incapacity.

    B. Willful or negligent mismanagement.

    C. Abuse, abandonment or inattention to the Trust.

    D. A federal or state charge against the Trustee involving commission of a felony or serious misdemeanor.

    E. An act of stealing, dishonesty, fraud, embezzlement, moral turpitude or moral degeneration.

    F. Failure to comply with a written fee or other agreement in the Trust operation.

    G. Changes by the Trustee in the account officer responsible for handling the Trust more frequently than every three years, unless such changes were made at the request of any co-Trustee, Grantor or the majority of Beneficiaries, represented by current beneficial interests.

    H. Relocation by the Trustee so as to interfere with the administration of the Trust.

    I. A demand for unreasonable compensation for Trustee services.

    J. Any other reason for which a state court of competent jurisdiction would remove a Trustee.

IX. If the Trustee is terminated by the majority of current Beneficiaries, for the foregoing reasons of cause or if the Trustee ceases to exist, the Beneficiaries may choose a competent Successor Trustee, if none is already named herein, according to the provision of the order of Trustee succession. If the Beneficiaries choose a Successor Trustee, said Successor Trustee must be independent of all the Beneficiaries. In choosing a Trustee, parents or legal guardians shall act on behalf of any minor Beneficiary.

X. Any Successor Trustee shall not be responsible for any breach of Trust by any prior Trustee nor be liable for failure to demand or contest any accounting by any of its predecessors or to compel such predecessors to redress any breach of Trust and shall account solely for the administration of the Trust Estate hereunder actually transferred to it and the foregoing provisions with respect to powers and duties shall, as to a Successor Trustee, apply only to the Trust property actually received from the predecessor Trustee. Any Successor Trustee shall, without the necessity of any act of transfer or action by any court, become vested with title to the Trust Estate and shall have all of the same powers and obligations as if such Successor Trustee was the original Trustee.

XI. No Trustee named above need give bond in any jurisdiction. If a fiduciary's bond may not be dispensed with, the Grantor requests that the bond be accepted without surety and in the lowest possible amount. In the absence of breach of Trust, no Trustee shall ever be required to qualify before, be appointed by or account to any court or obtain the order or approval of any court in the exercise of any power or discretion herein given.

### Section 11. Trustee Powers

I. The Trustee shall have all of the following express powers, in addition to all other powers granted by law and this or other agreements and same shall in no way be considered or construed as limiting or restricting the general powers of the Trustee:

    A. To hold and manage, to invest and reinvest in, to deal with title and title insurance problems, to lease, rent, mortgage, insure, repair, improve, sell, deed, exchange, convey, assign, hypothecate and encumber any real or personal property or any Trust, corporation, partnership, proprietorship or other business interest or investment that is or may become property of the Trust, at such times and upon such terms and conditions as it may deem prudent and in the best interests of the Trust and to receive and receipt for the proceeds of any such sale, assignment, conveyance or other transfer.

    B. To execute covenants, agreements, contracts or credits for and on behalf of the Trust, including instruments used in borrowing and lending.

    C. To sell outright or to lease or grant, the right to mine or drill and to remove from any real estate held hereunder, water and/or water rights, gas, oil, sand, gravel, rock and other minerals. Any bonus, royalties, rental or proceeds of sales shall be allocated to income and partly to principal as may in the sole discretion of the Trustee be deemed just and equitable.

    D. To determine and to allocate what is principal and what is income; to determine the allocation of income, principal, gains, losses, appreciation, depreciation and expenses between the Beneficiaries and the Trust and to charge all premiums on investments and to credit all discounts on investments against or to the principal as the case may be and not against or to the income and to distribute in kind and in divided and undivided interests. To determine whether administrative and interest expenses shall be chargeable to and paid from principal or income of either of the Trusts.

    E. To enforce any and all mortgages, pledges and deeds of Trust and to purchase at any sale any real or personal property subject to any mortgage, pledge or deed of Trust.

    F. To pursue legal remedies against outsiders contracting with the Trust in any manner, any court or any legal jurisdiction necessary to provide the relief sought by the Trustee, provided that such remedies are prudent and reasonable.

    G. To employ and to pay reasonable compensation to, attorneys, accountants, brokers, Trustee(s), consultants, investment and other professional advisors that may be necessary.

    H. To appoint officers, managers and subcontractors to assist in the management of the day-to-day operations of the Trust and to set and pay reasonable compensation in exchange for their services.

    I. To invest and reinvest in corporate stocks of all classes and to invest and reinvest in mutual funds, securities, commodities, options or in notes or mortgages on property in or outside of the United States; or to purchase life insurance of any type, fixed or variable annuities, health or disability insurance on any officer, manager, employee, Beneficiary or anyone whom a Beneficiary has an insurable interest in.

    J. To collect, receive and receipt for any and all income that may be derived from the property held under the terms hereof or from the investment or reinvestment of the proceeds thereof and to pay out of said income or out of the principal, if in the sole discretion of the Trustee it is necessary, advisable or equitable, all taxes and other costs of administration, including a reasonable compensation to the Trustee for its services and expenses which in the discretion of the Trustee may be necessary or advisable to incur for the preservation, maintenance and protection of the Trust property.

K. To open and maintain such financial, investment, banking and savings accounts as deemed necessary for the operation of the activities of the Trust and to be the exclusive signatory on all such accounts or to appoint other signatories from among the officers, managers and employees to any such accounts as deemed necessary and appropriate.

L. To make gifts or loans of Trust property to Grantor or other Beneficiaries in such amounts as deemed reasonable, for any worthwhile purpose that is not detrimental to the beneficial interests; or to accept assets by gift or bequeath.

M. To pay any share, part or sum directly to any Beneficiary who is a minor or to his natural guardian, without requiring qualifications according to the law or the Trustee may require the due appointment of a guardian, pursuing in each case the course which the Trustee may deem to be to the best interest of the minor. The Trustee shall be entitled to full credit and protection for all amounts distributed in the exercise of discretion hereby vested in it with like impunity as if such Beneficiary or Beneficiaries were of full legal age. If, in the Trustee's sole discretion, any Beneficiary, whether a minor or of legal age, is incapable of making proper disposition of any sum of income or principal that is payable or appointed to said Beneficiary under the previous terms of this Instrument, the Trustee(s) may apply said sum to or on behalf of the Beneficiary by anyone or more of the following methods: by payments on behalf of the Beneficiary to anyone with whom the Beneficiary resides or by payments in discharge of the Beneficiary's bills or debts, including bills for the premiums on any insurance policies or by paying an allowance to a Beneficiary directly. The foregoing payments shall be made without regard to other resources of the Beneficiary or the duty of any person to support the Beneficiary and without the intervention of any guardian or like fiduciary; provided, however, that the Trustee(s) shall insure and see that the application of the funds will not cause the Trust to be sued by any other person for a purpose other than the direct benefit of the Beneficiary and particularly so that said funds will not be diverted from the purpose of support and education of said Beneficiary.

N. To make division or distribution of the Trust Estate as and when it is required under the terms hereof, in cash or in kind, that is to say, in real estate, stocks, bonds, mortgages or other securities belonging to the Trust and such property so distributed shall be at such valuations as the Trustee may establish therefore, using customarily accepted methods of valuation.

O. To appoint, if for any reason it cannot act in any other jurisdiction, a person qualified to serve as Trustee in such other jurisdiction, whose duties shall be limited to those specified by the appointing Trustee and said Trustee so appointed shall otherwise have all the authority and obligations herein granted to or imposed upon Trustee hereunder.

P. To hold meetings as the Trustee deems appropriate with Grantor, Beneficiaries or employees to plan or discuss Trust affairs, though no one may require such meetings, except the Trustee and no one may require action or inaction from the Trustee at such meetings that is not provided for elsewhere herein.

Q. To borrow from time to time from any person or legal entity (including the Trustee) for such periods of time and upon such terms and conditions as may be deemed proper, such sums of money as may be deemed necessary or advisable and to secure such loans by the pledge, hypothecation or mortgage of any Trust property hereunder.

R. To enter into transactions with other Trusts which Grantor or the Beneficiaries of this Trust have beneficial interest, even though any Trustee of such other Trust is also a Trustee of this Trust.

S. To resign at any time by an instrument in writing signed and delivered to the current Beneficiaries, to appoint a suitable successor to itself and without the need of the permission of any court.

T. To exercise all the foregoing powers alone or in conjunction with others, even though any of the Trustee(s) are personally interested in the property that is involved, notwithstanding any rules of law relating to divided loyalty or self-dealing.

U. To exercise all the above powers and to do such other acts which in its sole judgment are needful or desirable for the proper and best control, management and investment or reinvestment of the property held in Trust hereunder, in the best interests of the Beneficiaries, whether or not it be authorized or appropriate for fiduciaries were it not for this broad grant of authority, to the same extent and effect as might legally be done by an individual in absolute ownership and control of said property.

## Section 12. Additions to Trust

The Grantor or any other person may grant and the Trustee may receive, as part of this Trust, additional real and personal property, by assignment, transfer, deed or other conveyance or by any other means, testamentary or inter vivos, for inclusion in the Trust herein created. Any such property so received by the Trustee shall become a part of the Trust into which it is transferred and shall be subject to the terms of this Instrument.

## Section 13. Investing and Holding Trust Assets

I. The primary purpose of the Trust is to hold the specific real and personal property conveyed by the Grantor into this Trust until this Trust terminates. The Trustee shall seek advice from the Grantor or from the Beneficiaries, if the Grantor is incapacitated or deceased, should there be an occasion when the Trustee thinks that the continued holding of specific property is not in the best interests of the Beneficiaries. Trustee shall then independently make the decisions that it deems to be in the best interests of the Beneficiaries. However, the decision by the Trustee shall consider the desires and needs of Grantor and/or Beneficiaries to the fullest extent possible in regard to the holding or disposition of original Trust property and said decision shall in fact conform to those desires and needs unless the best overall interests of the Trust and Beneficiaries is obviously better served by other action. If either Grantor or a majority of Beneficiaries approach the Trustee about disposition of any property, Trustee is to likewise give the fullest consideration possible to such requests, before making his/her/its independent decision on the matter.

II. When the Trustee holds any property conveyed into this Trust for an indefinite period of time or until the termination of the Trust, the Trustee shall not be held liable for any losses that may occur from the said continued holding of such property, since such holding of the property fulfills a primary purpose of the Trust, as stated in Paragraph I, above.

III. With any property which is cash, securities or otherwise liquid, the investment management of those assets shall be turned over to an appropriately certified investment counselor, except as specified in the following paragraph, absent any other advice or wishes of the Grantor or Beneficiaries. Said investment counselor shall be selected by the Trustee with reasonable care and shall be instructed to make conservative, but diversified investments. Said investment counselor shall be encouraged and authorized to place such assets in mutual funds, where said counselor deems it appropriate. The Trustee shall not be held liable for any losses that may occur from the investment decisions of said investment counselor if the Trustee has used reasonable care in the selection of the investment counselor.

IV. The Trustee may act upon the solicited or unsolicited recommendations of the Grantor or the Beneficiaries, as represented by a majority of beneficial interests, in the purchase or sale of property or in the investment of Trust funds. If the Beneficiaries are minors, then the recommendations of their legal guardian shall apply equally. If the Trustee accepts and acts upon such recommendations of the Grantor or the Beneficiaries, the Trustee shall not be held liable for any losses which may occur from said sale, purchase or investment.

V. If the Trustee is a corporation, a Trust officer of said corporation, who holds the appropriate securities or insurance license(s), may buy or sell securities or insurance of any type to or for the Trust, provided that

another Trust officer of the same Trustee corporation, who will not receive any commissions or fees for said transaction, shall first approve said transaction for the Trust.

### Section 14. Qualification to Hold Sub S Corporate Stock

The purpose of this instruction is to ensure that if this Trust or any other Trust created under this document holds stock in one or more S Corporations, this Trust or any other Trust will qualify as a Subchapter S Trust under Section 1361 of the Code as it then exists or is amended. Therefore, if any Trust hereunder becomes the owner of any stock in an S Corporation, the Trustee of that Trust shall follow the provisions of that Trust to the extent those provisions are not inconsistent with this instruction and regardless of any other provisions of that Trust, the Trustee shall follow these instructions to preserve the Trust's qualification and to prevent the corporation from losing its S Corporate status.

A. If any Trust contains both S Corporation stock and other assets, the Trustee shall subdivide the Trust into separate shares so that for each Beneficiary there is a separate Trust share that contains the S Corporation stock allocated to that Beneficiary and a separate share for the other assets allocated to that Beneficiary. The S Corporation Trust share is a separate Trust to be managed according to these instructions to protect the Qualified S Corporation Trust.

B. There shall be only one (1) income Beneficiary of any separately held share of Sub S Corporation stock.

C. All income of that stock (within the meaning of Section 643(b) of the Code) shall be distributed to the one Beneficiary thereof at least annually.

D. The Trustee's distribution, if any, of the Trust's principal from a separately held share that contains Sub S Corporation stock shall be to only the income Beneficiary of that share during that Beneficiary's lifetime.

E. The income Beneficiary's income interest shall end on the earlier of the Beneficiary's death or the Trust's termination by its terms.

F. If the Trust ends during the income Beneficiary's life, the Trustee shall distribute all the Trust's assets of that separately held share to that Beneficiary outright.

### Section 15. Outside Parties Authority to Deal with Trustee(s)

No purchaser and no issuer of any stock, bond or other instrument evidencing a deposit of money or property or other person dealing with the Trustee(s) hereunder with respect to any property hereunder as purchaser, lessee, party to a contract to lease or in any other capacity whatsoever, shall be under any obligation whatsoever to see to the disbursing of money paid to the Trustee(s) or to the due execution of this Trust in any particular, but such persons shall be absolutely free in dealing with the Trustee(s) on the same basis as though the Trustee(s) were the absolute owners of the said property, without any conditions, restrictions or qualification whatsoever.

### Section 16. No Physical Division of Trust Property Required

Each Trust established pursuant to this Trust Declaration and Agreement shall be a separate and distinct Trust. The Trustee, however, need make no physical segregation of the assets of the Trusts hereby established or to be established except to the extent required for the purpose of distribution of principal, however, the Trustee shall keep separate accounts for the different undivided interests held in Trust hereunder.

### Section 17. Division in Kind

In any case in which the Trustee is required to divide the Trust Estate or any Trust property or any portion thereof, into parts or shares for the purpose of distribution or otherwise, the Trustee is authorized, in the

Trustee's absolute discretion, to make the division and distribution in kind or in money or partly in kind and partly in money, pro rata or non-pro rata and for this purpose make such sales of the Trust property as the Trustee may deem necessary on such terms and conditions as the Trustee shall see fit.

### Section 18. Life Insurance

The Trust may be named as Beneficiary of death benefit proceeds of life insurance policies. Such death benefit proceeds will be subject to all the terms hereof. The Trustee shall not be obligated to pay any premiums, assessments or other charges on any policies not owned by either of the Trusts, nor to keep anyone informed with respect thereto. The Trustee shall not be responsible for any acts or omissions of the owners in connection with any policy not owned by the Trust. The owner of each policy in which the Trustee is named Beneficiary is deemed to have reserved all rights, options and privileges, including all incidents of ownership, conferred by the terms of the policies. Such rights shall include, but not be limited to, the right to change the Beneficiaries of such policies.

### Section 19. Care of Minors After Death or Incapacitation of the Grantor

I. If the Grantor becomes mentally incapacitated during the term of the Trust, the Trustee shall pay to any minor child of that Grantor as much of the Trust net income and principal of the Grantor's share of the Trust as the Trustee deems to be in the best interests of said minor child, for the support, health or education of the child. Any amounts of income or principal which may be distributed are at the Trustee's sole discretion. The Trustee may make such payments or application from time to time until the previously incapacitated Grantor is no longer incapacitated or until the incapacitated Grantor's death.

    A. Under the provisions of Paragraph I above, the Trustee shall not make distributions to children of the Grantor after said children have reached the age of majority or the age at which they are entitled to distributions under the "Distributions to Secondary Beneficiaries" Section of this Trust Agreement.

II. In the event of the death or incapacitation of the Grantor during the term of this Trust, sufficient monies from the Trust shall be provided by the Trustee for the support, health or education of the Grantor's minor child(ren) until such time as each minor child reaches the age of majority or the age at which they are entitled to distributions under the "Distributions To Secondary Beneficiaries" Section of this Trust Agreement. Distributions under this Paragraph shall be made according to the individual needs of each minor child, as deemed best by the Trustee for each minor's support, health or education.

III. Any payments made under the provisions of this Section of the Trust shall not be charged against the individual share of the Trust estate which is allocated to a minor child or Beneficiary but shall be considered a general charge against the Trust which will be borne by all Beneficiaries equally. Some of the Secondary Beneficiaries may be old enough to be entitled to their regular share or distribution from the Trust, when there are still one or more Secondary Beneficiaries who are minor children. In that case, the Trustee will be required to withhold enough of the regular Trust share or distributions from the "of-age" Secondary Beneficiaries, on a pro-rata of all such of-age Secondary Beneficiaries, to meet the needs of this Section of the Trust.

### Section 20. Trust As Beneficiary of Pension Plan(s)

I. Any Trust created hereunder and which is to become the Beneficiary of a retirement plan (defined in Sub-Paragraph A below), shall become irrevocable no later than the date on which said Trust actually become the Beneficiary of such retirement plan.

    A. For purposes of this Section, the term "Retirement Plan" means any benefit or amount that is owned by or payable to this Trust under an individual retirement account (IRA), as defined in Section 408 of the IRC; a Roth IRA as defined in Section 408A of the IRC; a deemed IRA or Roth IRA under Section 408(q); an annuity or mutual fund custodial account under Section 403(b); a pension, profit sharing, stock bonus or other Retirement Plan that is qualified under

Section 401(a); any other Retirement Plan or arrangement that is subject to the "minimum distribution rules" of Section 401(a)(9) of the IRC or equivalent rules under any other IRC Section; any annuity; or plan or arrangement of deferred compensation for services.

II. Each respective Secondary Beneficiary to whom the Retirement Plan is to be distributed shall state to the Trustee whether to make distributions to such Beneficiary in a lump sum, (per required minimum distribution rules of the Plan, if applicable) or other distribution arrangements. Further, such Beneficiary shall state to Trustee whether such Beneficiary desires distributions which minimize income taxes on the distributions. Trustee shall then distribute the plan to such Beneficiary according to the Beneficiary's requirement, provided that these requirements are not in conflict with the provisions of the "Distributions to Secondary Beneficiaries" Section of this Trust or in conflict with ERISA §402(a)(2).

    A. Where the respective Secondary Beneficiary requires this, the Retirement Plan withdrawals shall be calculated in advance by the Trustee and made in a manner which is designed to minimize income taxes on the withdrawals and which maximizes the deferral of income taxes on the Plan assets. This includes calculating and using the minimum distribution rules or other rules of the Retirement Plan.

    B. Trustee shall be free from any liability for meeting the stated requirements of the respective Secondary Beneficiary, as described in the above Paragraph II, even though such requirement does not produce the lowest or best tax result for such Beneficiary.

III. No Retirement Plan benefits shall be distributed from the Trust without first considering all applicable rules and laws to such distributions.

IV. To meet the needs of minimizing income taxation on Retirement Plans assets or withdrawals, the Trustee should consider the following:

    A. The Trustee may elect to receive distributions from the Plan in installments (annually) or lump sum.

    B. The Trustee shall consider "stretching" or spreading the Retirement Plan withdrawals over the longest time period allowed under §402(a)(2). The Trustee may distribute the Retirement Plan benefits over the course of such deferral or at the end of the time in which the Retirement Plan benefits are allowed to be deferred.

    C. To the extent the income of the Plan is inadequate, the Trustee may distribute to or on behalf of Beneficiaries such amounts of Trust corpus as may be required to meet the requirements of the above stated Distributions to Secondary Beneficiaries provision.

    D. In calculating income earned by the Plan, the Trustee may allocate Plan expenses, including income taxes and Trustee fees which are attributable to principal distributions, so that income distributions from the Plan are not reduced.

V. At his/her/its discretion, the Trustee may establish separate shares or Trusts for the respective Beneficiaries (hereinafter Separate Share beneficiary) of such Plans and for any interests in such Plans.

VI. The Trustee may make direct "Trustee to Trustee" transfers of any benefits or interests in any Plan.

VII. The Trustee at all times has any power necessary to modify or add to the instructions of this Section of the Trust, if necessary or desirable in the sole discretion of the Trustee, to produce a better tax result, to better meet the estate planning needs of any Beneficiary, to better comply with current law, any changes in the law or any applicable legal ruling.

VIII. Notwithstanding anything to the contrary herein, the Trustee of any Separate Share Trust created under this Provision, who holds any Retirement Assets, shall hold, manage, administer and invest all Retirement Assets for the benefit of said Separate Share Trust beneficiaries as provided in this Section.

A.  Minor Child Beneficiaries
The Trustee shall hold, manage, administer and invest all qualified assets held for any Separate Share Trust beneficiary who is the child of the Retirement Account owner and who has not reached the age of majority for purposes of determining Eligible Designated Beneficiary status under Code Section 401(a)(9)(E)(ii) for exclusive benefit of said Separate Share Trust beneficiary. The Trustee shall determine whether the trust is a conduit trust or an accumulation trust under the permissible regulations. The Trustee, however, must make such determination in writing, with signature acknowledged, by September 30 of the year following the year of the plan owner's death. If no determination is made, then the Trustee shall administer said trust as a conduit trust. Any acknowledged written determination by the Trustee to treat any trust as an accumulation trust shall be held by the Trust document.

1.  "Conduit Distributions" From Retirement Accounts
Any Trust herein is administered as a conduit trust in accordance with Regulations Section 1.401(a)(9)-5, and to the extent the Trustee receives distributions from a Retirement Account, the Trustee shall, upon its receipt and within the same tax year, distribute, in the Trustee's sole and absolute discretion, to or for the benefit of the Separate Share Trust beneficiary all of said distributions (net of expenses and net of income, estate, inheritance, generation skipping transfer tax, or any other tax, to the extent said expenses and taxes are property allocable to distributions received or to the balance remaining in said Retirement Account), for as long as the Separate Share Trust beneficiary shall live or until the earlier termination of his or her trust. The purpose of this section is to ensure that the life expectancy of any Eligible Designated Beneficiary of the Trust may be used to calculate the minimum distributions required by the Code. Any amounts required to be withdrawn from the Retirement Plan that are distributed shall, to the extent they are distributed, reduce any mandatory distributions required under other provisions of this Trust Agreement. Upon the sooner of: (i) said minor child Separate Share Trust beneficiary attaining the age of majority or (ii) his or her death, the Trustee shall hold, manage, administer and invest the balance of all Retirement Assets for the benefit of said minor Separate Share Trust beneficiary, is an accumulation trust pursuant to paragraph 2 below.

2.  "Accumulation Distribution" From Retirement Accounts
If any Trust herein is administered as an accumulation trust in accordance with Regulations Section 1.401(a)(9)-5 and to the extent the Trustee receives distributions from a Retirement Account, the Trustee may, in the Trustee's sole and absolute discretion, distribute to or apply for the benefit of the Separate Share Trust beneficiary all or part of said distributions (net of expenses and net of income, estate, inheritance, generation-skipping transfer tax, or any other tax, to the extent said expenses and taxes are properly allocable to distributions received or to the balance remaining in said Retirement Account), for as long as the Separate Share Trust beneficiary shall live or until the earlier termination of his or her trust. Any amount not distributed to or applied to the benefit of the Separate Share Trust beneficiary by the close of the tax year in which the Trustee received a distribution from a Retirement Plan, shall be held by the Trustee and added to the principal of the trust to be administered in accordance with its provisions. Any amounts required to be withdrawn from the Retirement Plan that are distributed, shall, to the extent they are distributed, reduce any mandatory distributions required under other provisions of this Trust Agreement.
Notwithstanding the foregoing, the Trustee must withdraw the balance of any Retirement Account into said Separate Share beneficiary's trust, no later than December 31 of the year that is ten (10) years after the Minor Child Separate Share Trust beneficiary attains

the age of majority and hold, manage, administer and invest the balance in accordance with the provisions of said beneficiary's Separate Share Trust.

**B. Beneficiaries Less Than Ten (10) Years Younger Than a Grantor**
The Trustee shall hold manage, administer and invest all qualified assets held for any Separate Share Trust beneficiary who is less than ten (10) years younger than the deceased Retirement Account owner, for the exclusive benefit of said Separate Share Trust beneficiary. The Trustee shall determine whether the Trust shall be administered as a conduit trust or accumulation trust under the permissible regulations. The Trustee, however, must make a determination in writing, with signature acknowledgement, by September 30 Of the year following the year of the plan owner's death. If no determination is made, then the Trustee shall administer said trust as a conduit trust. Any acknowledged written determination by the Trustee to treat any trust as an accumulation trust shall be held by the Trustee with the Trust document.

1. "Conduit Distributions" From Retirement Accounts
If any Trust herein is administered is I conduit trust, and to the extent the Trustee receives distributions from a Retirement Account, the Trustee shall, upon its receipt and within the same tax year, distribute, in the Trustee's sole sod absolute discretion, to or for the benefit of the Separate Share Trust beneficiary all of said distributions (net of expenses and net of income, estate, inheritance, generation-skipping transfer tax, or any other tax, to the extent said expenses and taxes are properly allocable to distributions received or to the balance remaining in said Retirement Account), tor as long as the Separate Share Trust beneficiary shall live or until the earlier termination of his or her trust. The purpose of (his section is to ensure that the life expectancy of any Eligible Designated Beneficiary of the Trust may be used to calculate the minimum distributions required by the Code. Any amounts required to be withdrawn from the Retirement Plan that are distributed shall, to the extent they are distributed, reduce any mandatory distributions required under other provisions of this Trust Agreement.

Notwithstanding the foregoing* the Trustee must withdraw the balance of any Retirement Account into said separate share beneficiary's trust no later than December 31 of the year that is ten (10) years after the death of the less than ten (IO) years younger Separate Share Trust Beneficiary and hold, manage, administer and invest the balance in accordance with the provisions of said beneficiary's Separate Share Trust as act forth in this Provision.

2. "Accumulation Distributions" From Retirement Account
If any Trust herein is administered as an accumulation trust in accordance with Regulations Section 1.401(a)(9)-5, and to the extent the Trustee receives distributions from a Retirement Account, the Trustee may, in the Trustee's sole and absolute discretion, distribute to or apply for the benefit of the Separate Share Trust beneficiary all or part of said distributions (net of expenses and net of income, estate, inheritance, generation-skipping transfer tax, or any other tax, to the extent said expenses and taxes arc property allocable to distributions received or to the balance remaining in said Retirement Account), for as long as the Separate Share Trust beneficiary shall live or until the earlier termination of his or her trust. Any amount not distributed to or applied to the benefit of the Separate Share Trust beneficiary by the close of the tax year in which the Trustee received distribution from a Retirement Plan, shall be held by the Trustee and added to the principal of the trust to be administered in accordance with its provisions. Any amounts required to be withdrawn from the Retirement Plan that are distributed, shall, to the extent they are distributed reduce any mandatory distributions required under other provisions of this Trust Agreement.

"Notwithstanding the foregoing, the Trustee must withdraw the balance of any Retirement Account into said separate share beneficiary's trust, no later than December 31 of the year that is ten (10) years after the death of the Retirement Account owner and

hold, manage, administer and invest the balance in accordance with the provisions of said beneficiary's Separate Share Trust as set forth in this Provision.

C.  Beneficiaries Who Are Disabled or Chronically Ill

The Trustee shall hold, manage, administer and invest all qualified assets held for any Separate Share Trust beneficiary who is Disabled or Chronically Ill as defined in this Trust Agreement, for the benefit of Separate Share Trust beneficiary as an accumulation trust, the Trustee may, in the Trustee' sole and absolute discretion, distribute to  or apply for the benefit of the Separate Share Trust beneficiary all or part of said distributions (net of income, estate, inheritance, generation-skipping transfer tax, or any other tax, to the extent said expenses and taxes are properly allocable to distributions received or to the balance remaining in said Retirement Account), for as long as the Separate Share Trust beneficiary shall live or until the earlier termination of his or her trust. The purpose of this section is to ensure that the life expectancy of any Eligible Designated Beneficiary of the Trust may be used to calculate the minimum distributions required by the Code. Any amount not distributed to or applied to the benefit of the Separate Share Trust beneficiary by the close of the tax year in which the Trustee received a distribution from a Retirement Plan, shall be held by the Trustee and added to the principal of the trust to be administered in accordance with its Provisions.  Any amounts required to be withdrawn from the Retirement Plan that are distributed, shall, to the extent they are distributed, reduce any mandatory distributions required under provisions of this Trust.

Upon the death of the Disabled or Chronically Ill Separate Share Trust beneficiary, the Trustee shall hold, manage, administer and invest the balance of all Retirement Assets as an accumulation trust in accordance with Regulations Section 1.401(a)(9)-5, and as set forth in the provisions of said Disabled or Chronically Ill beneficiary's Separate Share Trust in this Provision. Notwithstanding the foregoing, the Trustee must withdraw the balance of any Retirement Account into said separate share beneficiary's trust, no later than December 31 of the year that is ten (10) years after the death of the Disabled or Chronically Ill Share Trust Beneficiary and hold, manage, administer and invest the balance in accordance with the provisions of said beneficiary's Separate Share Trust as set forth in this Provision.

D.  Other Separate Share Beneficiaries

The Trustee shall hold, manage, administer and invest all qualified assets held for any Separate Share Trust beneficiary, or upon his or her death, his or her Separate Share trust beneficiaries, who is not: (i) a surviving spouse of a Grantor, (ii) a Minor Child of the Retirement Account owner, (iii) less than ten (10) years younger than the Retirement Account owner, or (iv) a Disabled or Chronically Ill beneficiary ("Other Separate Share beneficiary"), as an accumulation trust, and to the extent the Trustee receives distributions from a Retirement Account, the Trustee may, in the Trustee's sole and absolute discretion, distribute to or apply for the benefit of the Other Separate Share beneficiary or his or her Trust, all or part of said distribution (net of income, estate, inheritance, generation-skipping transfer tax, or any other tax, to the extent said expenses and taxes are properly allocable to distributions received or to the balance remaining is said Retirement Account), for as long as the Other Separate Share beneficiary shall live or until the earlier termination of his or her trust. Any amount not distributed to or applied to the benefit of the Other Separate Share Beneficiary by the close of the tax year in which the Trustee received a distribution from a Retirement Plan, shall be held by the Trustee and added to the principal of the trust to be administered in accordance with its provisions. Any amounts required to be withdrawn from the Retirement Plan that are distributed, shall, to the extent they are distributed, reduce any mandatory distributions required under other provisions of this Trust Agreement. Notwithstanding the foregoing, the Trustee must withdraw the balance of any Retirement Account into said Separate Share beneficiary's trust, no later than December 31 of the year that is ten (10) years after the death of Retirement Account owner and hold, manage, administer and invest the balance in accordance with the provisions of said Separate Share Trust as set forth in this Provision.

### Section 21. Investing and Holding Trust Property By Corporate Trustee

I. If any Corporate Trustee is directly appointed to or succeeds from prior appointment to the position of Trustee (hereafter "Corporate Trustee"), it is agreed by the Grantor that said Corporate Trustee's primary responsibility to this Trust is to act as the chief entity administrator, legal title holder and fiduciary. But the Corporate Trustee's responsibilities and liabilities for the management, caretaking, condition, investment or appreciation of the Trust estate are limited as provided for below:

A. As long as the Grantor is not mentally incapacitated and is physically capable, the Corporate Trustee will not act as the manager or caretaker of non-investment Trust property and has no duty to nor responsibility or liability for the preservation or protection of the value, appreciation or condition of such property. During the Grantor's lifetime, the management and caretaking of such property shall be provided by the Grantor, either directly or through caretakers of Grantor's choosing. Should the Grantor's diminished mental or physical capacity or death render the Grantor unable to manage and care for such non-investment Trust property, then the Secondary Beneficiaries, as modified or amended from time to time, shall be next in line to either perform these duties or to appoint a caretaker to act in their place. This management and caretaking responsibility given to the Secondary Beneficiaries shall be exercised by those Beneficiaries representing a majority of their class of beneficial interest, whether those interests are still secondary or have become current.

1. No investment property is defined as property which is primarily held for the personal use of the Grantors and/or other Beneficiaries and is not primarily held for investment, income or capital gains purposes.

B. The Corporate Trustee will not act as the investment manager/advisor or financial planner of investment property. During the Grantor's lifetime, investment management, advice and/or financial planning for the Trust shall be provided by the Grantor, either directly or through an investment adviser of Grantor's choosing. This investment management, advice and or planning responsibility retained by the Grantor extends to directing the sale and/or purchase of investment property. Should the Grantor's diminished mental capacity or death render him/her unable to manage the investment responsibility, then the Secondary Beneficiaries shall be next in line to either perform the investment and financial planning or to appoint an investment advisor or financial planner of their choosing. This investment and financial management, advice and or planning responsibility given to the Secondary Beneficiaries shall be exercised by those Beneficiaries representing a majority of their class of beneficial interest s, whether those interests are still secondary or have become current.

1. Investment property is defined as property which is primarily held for investment purposes and/or for the production of income or capital gains.

C. The Grantor retains the right to direct the investment of the proceeds of the sale of all property of the Trust. This specifically applies to any residential property that the Grantor uses personally. If Trust property is sold, whether at the direction of the Grantor or not, the Grantor retains the same rights in any new property which the proceeds are invested in, as the Grantor had in the Trust property which was sold.

D. The Corporate Trustee shall in all cases and at all times maintain signatory authority over all Trust property and accounts. The management and caretaking responsibility for non-investment Trust property and the investment management, advice and planning responsibility for investment property, from the Grantor or Secondary Beneficiaries, shall not include nor allow signature control over any Trust property or account at any time (unless the Grantor or Secondary Beneficiary is also a co-Trustee with the Corporate Trustee). Therefore, when the Grantor or the Secondary Beneficiaries, exercising their responsibilities retained and/or given in sub-paragraphs A thru C above, make an investment, financial or a buy-sell decision, the Corporate Trustee's signature shall be required to initiate and/or complete any resulting investment, financial or buy-

sell action. The Corporate Trustee shall not withhold its signature arbitrarily nor in any confrontational manner. The Corporate Trustee may only withhold its signature due to some document error, a technical or legal problem with the applicable document(s) or due to a term or provision in the document(s) which creates undue liability for any party to this Trust.

E. The Corporate Trustee shall not under any circumstances be held liable for any economic losses or sub-standard economic performance which may occur to any Trust property which is subject to the management, caretaking or investment advice or financial planning of either the Grantors or the Secondary Beneficiaries, as provided for above. This provision is in effect whether or not the Grantor or Secondary Beneficiaries have actively provided such management, caretaking or investment advice or financial planning for such property. The Corporate Trustee may be held responsible only for the investment and/or economic performance which the Corporate Trustee has agreed either in writing or by direct action to personally provide the management, caretaking or investment advice or financial planning for.

II. If at any time and/or for any reason, the Grantor or the Secondary Beneficiaries are managing or are able to adequately manage or invest the Trust's property and/or assets, then the Corporate Trustee, acting in its sole discretion, shall either handle the management, caretaking, investment advice and financial planning directly or indirectly through a caretaker or an investment advisor (for investment property). In the case of indirect caretaking or investment advisory services, the caretaker or investment advisor may be of the Corporate Trustee's choosing.

III. If, pursuant to the above Paragraph II, the Corporate Trustee appoints an investment advisor to manage the Trust's investment planning, such advisor shall be appropriately licensed under either or both state or federal laws, whichever licensing is appropriate and legally required for the investments chosen and planning made for the Trust. Said investment advisor shall be selected by the Corporate Trustee with reasonable and normal care and the advisor shall be instructed to make conservative, but diversified investments. The investment advisor shall be advised by the Corporate Trustee that he/she is obligated to observe the prudent investment rules in general and specifically the prudent investor rule in general and specifically the prudent investor rules for Trusts subject to the laws of the state of the Trust's domicile (or of whatever other state the Trust may become or require a higher level of care and prudence than the same type rules required to protect an individual investor.

A. The Corporate Trustee shall not under any circumstances be held liable for any economic losses or sub-standard economic performance which may occur to any Trust property or asset which is subject to the investment management, advice or planning of the investment advisor chosen by the Corporate Trustee pursuant to the above Paragraph III. The Corporate Trustee may be held responsible only for the investment and/or economic performance of property or an asset which the Corporate Trustee has agreed either in writing or by direct action to personally provide the investment management, advice or financial planning for.

IV. Alternatively to the provisions in this Section above, the Corporate Trustee in its sole discretion may act upon the solicited or unsolicited recommendations of the Grantor or other current Beneficiaries, as represented by a majority of beneficial interest, in the investment of or planning for investment property. If the Beneficiaries are minors, then the recommendations of their legal guardian shall apply equally.

A. If the Corporate Trustee accepts and acts upon such recommendations of the Grantor or the other current Beneficiaries, the Corporate Trustee shall not be held liable for any economic losses or sub-standard economic performance which may occur to any investment property which is subject to such recommendations. The Corporate Trustee may be held responsible only for the investment and/or economic performance of property which the Corporate Trustee has agreed either in writing or by direct action to provide the investment management /advise or financial planning for.

V. A primary function of the Trust is to hold the property conveyed by the Grantors into this Trust until this Trust terminates or until the Grantor or Secondary Beneficiary(ies) become incapacitated or die, direct otherwise as provided herein.

A. The Corporate Trustee shall not under any circumstances be held liable for any economic losses or sub-standard economic performance which may occur to any property which is held in the Trust pursuant to the above Paragraph V. The Corporate Trustee may be held responsible only for the investment and/or economic performance of Trust property which the Corporate Trustee has agreed either in writing or by direct action to personally provide the caretaking, investment management, advice or financial planning for or to sell or purchase such property.

## Section 22. Governing Provisions

*Controlling Law.* This Trust has been accepted by the Trustee in the State of Illinois and unless otherwise provided in this Instrument or required by the laws of another state where property is situated, the Trust's validity, construction and all rights hereunder shall be governed by the laws of Illinois. This paragraph shall apply regardless of any change of residence of the Trustee or any Beneficiary or the appointment or substitution of a Trustee residing in another state.

*Change of Controlling Law.* Notwithstanding the foregoing, the Trustee shall have the power, exercisable in his/her/its sole and absolute discretion, to declare, by written instrument that this Trust and any and all Trusts derived herefrom shall from the date of such written instrument take effect in accordance with the law of some other state or county in any part of the world which shall be the forum for the administration hereof (but subject to the power conferred by this paragraph and until any further declaration is made hereunder). In selecting a new Controlling Law, the Trustee is urged to give special care and attention to the tax and other laws of the applicable jurisdiction so as most closely implement the Grantor's intentions.

*Amendment to Operate Under New Controlling Law.* If the Controlling Law of this Trust changes, then the Trustee may by written instrument amend the Trustee's powers and such other provision of this Trust as the Trustee shall consider necessary or desirable to secure that so far as may be possible, such Trust's powers and provisions shall be as valid and effective under the law of the place named in such declaration as they are under the laws of Illinois. No matter the change in legislation or controlling law, this Trust's provisions and intent shall comport with said changed legislation. If the new legislation creates conflicts within or among the provisions of this Trust, the reasonable interpretation of such shall control.

*Acts on Behalf of Beneficiary Under Disability.* All statements, trust accountings, documents, releases, notices or other written instruments, including, but not limited to, written instruments concerning the appointment or removal of Trustees, required to be delivered to or executed by a beneficiary, may be delivered to and executed by the legally appointed conservator of any incompetent beneficiary or a parent or legal guardian of a minor beneficiary, and regardless of any conflict of interest, when so delivered or executed shall be binding upon said incompetent or minor beneficiary, and shall be of the same force and effect as if delivered to or executed by a beneficiary acting under no legal disability; provided, however, in the event of a disagreement between the parents of said minor beneficiary who may otherwise qualify to represent and bind said minor beneficiary pursuant to this subsection or applicable law, then the parent who is a descendant of the Grantor shall represent and bind said minor beneficiary.

*Holder of a Power of Appointment.* The holder of any presently exercisable or testamentary power of appointment, including a general power of appointment and any limited power of appointment regardless of the class of appointees, and regardless of any conflict of interest, may represent and bind all persons, including but not limited to those persons within the class of appointees and those persons whose interests would be eliminated by the exercise or non-exercise of such power of appointment. Notice, information, accountings or reports given to the holder of any such power of appointment shall have the same effect as if given directly to the person represented. Similarly, actions, including but not limited to, the execution of an agreement, taken by the holder of any such power of appointment, are binding on the person represented to the same extent as if the actions had been taken by the person represented. The holder of a power of

appointment is not a fiduciary and shall not be subject to any fiduciary duties. The foregoing representation provisions shall not apply to (i) any matter involving fraud or bad faith, or (ii) a power of appointment held by a person while said person is acting as the sole Trustee of such trust. As used in this subsection, the term "power of appointment" does not include a power of a Trustee to make discretionary distributions of income and/or principal.

*Notices, Disclosure and Trust Accountings.*
(a) Notices. With respect to each trust created hereunder, to the extent permissible under applicable law, all notices or other information required to be given by a Trustee to any qualified beneficiary under applicable law are hereby waived and the Trustee shall be under no duty to provide any said notice or other information to any qualified beneficiary of such trust unless specifically provided to the contrary in this Trust.

(b) Disclosure of Trust. With respect to each trust created hereunder, to the extent permissible under applicable law, any requirement to disclose or provide a copy of the Declaration of Trust (whether certain provisions or the trust in its entirety) to any qualified beneficiary is hereby waived and the Trustee shall be under no duty to disclose or provide a copy of the Declaration of Trust (whether certain provisions or the trust in its entirety) to any qualified beneficiary of such trust; provided, however, upon request of a beneficiary of such trust, said Trustee shall be required only to provide said beneficiary with the specific provision or provisions which specifically enumerate the distributions said beneficiary is currently entitled to receive.

(c) Trust Accountings. With respect to each trust created hereunder, to the extent permissible under applicable law, all trust accountings required to be given by the Trustee to any qualified beneficiary are hereby waived and the Trustee shall be under no duty to provide any said trust accountings to any qualified beneficiary of such trust; provided, however, a Trustee shall provide a trust accounting sufficient under applicable law upon the written request of a beneficiary of such trust.

*Books and Records.* At such time as there is a Corporate Trustee, it shall have the care and custody of all assets which comprise the Trust Estate and shall keep said assets with the same care as given to other property held by it in a fiduciary capacity and shall maintain full and accurate books of account and records of receipts and disbursements and other financial transactions relative to the Trust Estate, all of which shall be available to any and all Beneficiaries whose interests are vested hereunder at any reasonable time for inspection.

*Trustee Accounting.* The Trustee of any Trust created hereunder may at any time render an account with respect thereto to the Beneficiaries of such Trust during the period accounted for, the personal representative of any deceased Beneficiary who was entitled to receive any income during the period accounted for and the persons to whom the principal of the respective portion of the Trust Estate would be distributed if such Trust were then to terminate (or if such Trust has terminated, to the persons to whom it is to be distributed) and if approved by a majority in interest of the above-specified persons (or if any such Beneficiary shall be a minor or incompetent, by either of such minor's parents or the guardian or custodian of such Beneficiary's person or estate other than the Trustee) such account shall be final, binding and conclusive upon all persons who may then or thereafter have an interest in the Trust Estate. The Trustee may also at any time render a judicial account with respect to the Trust Estate to the extent permitted by law.

*Trust Statements.* Following the death of Grantor, any Beneficiary hereunder may, upon his or her written request or the written request of his or her legal representative, made not more than annually, may demand and receive from the Trustee, a statement of the financial condition of the Trust, including but not limited to a statement of principal, income and expenses. Such request shall be provided at the discretion of the Trustee of this Trust.

*Notices.* Within ninety (90) days of the Trust becoming irrevocable, a copy of the Trust shall be provided to every Secondary Beneficiary (also any "Qualified Beneficiaries"). Notices to be provided for any Qualified Beneficiary's Designated Representative.

***Designated Representatives.*** A Designated Representative is to receive notice for any Qualified Beneficiary under the age of eighteen (18) years of age. Any Designated Representative cannot be a Trustee or another Qualified Beneficiary. Unless disallowed by this paragraph, a Designated Representative is the legal guardian of the minor Qualified Beneficiary.

***Severability.*** If any provisions of this Instrument shall be unenforceable, the remaining provisions shall nevertheless be carried into effect.

***Third Parties.*** Any transfer agent or other person dealing with these Trusts (hereinafter referred to as a "third party") shall be entitled to rely upon a copy of those portions of this Instrument and any amendments thereto, setting forth the facing page, Powers of Trustee and signature page, which partial copy shall be verified as a true copy of such portions then in effect by the Trustee then acting or by an attorney for the Trustee. Such third party shall incur no liability to these Trusts, the Grantor or any Beneficiary hereunder, for acting upon an order or request of the Trustee made pursuant to the terms hereof as set forth in such partial copy and shall not be required to see to the disposition of any proceeds or the faithful discharge of the Trustee's duties hereunder. In no event shall any third party have access to a copy of the portion hereof setting forth the distribution of income and principal, except as may be determined in the absolute discretion of the Trustee.

***Incontestability Provision.*** The beneficial provisions of this instrument (and of Grantor's last will and testament or called Pour Over Will) are intended to be in lieu of any other rights, claims or interests of whatsoever nature, whether statutory or otherwise, except bona fide pre-death debts, which any Beneficiary hereunder may have against or in Grantor's estate of the properties in Trust hereunder may have against or in Grantor's estate of the properties in Trust hereunder. Accordingly, if any Beneficiary hereunder assets any claim (except a legally enforceable debt), statutory election or other right or interest against or in Grantor's estate, Grantor's Will or any properties of this Trust, other than pursuant to the express terms hereof or of said Will or directly or indirectly contests, disputes or calls into question, before any court, the validity of this instrument or of said Will, then;

    A. Such Beneficiary shall thereby absolutely forfeit any and all beneficial interests of whatsoever kind and nature which such Beneficiary might otherwise have under this instrument and the interests of the other Beneficiaries shall thereupon be appropriately and proportionately increased and/or advanced,

    B. All of the provisions of this instrument, to the extent that they confer any benefit, powers or rights whatsoever upon such claiming, electing or contesting Beneficiary, shall thereupon become absolutely void and revoked and

    C. Such claiming, electing or contesting Beneficiary, if then acting as a Trustee hereunder, shall automatically cease to be a Trustee and shall thereafter be ineligible either to select, remove or become a Trustee hereunder. Unless a court determines that the Trustee has unequivocally acted in bad faith or with gross negligence in making any decisions under this instrument, no reimbursement for costs or expenses of bringing any Trust construction suit or any other suit questioning the authority of the Trustee shall be made from any Trust hereunder.

The foregoing shall not be construed, however, to limit the appearance of any Beneficiary as a witness in any proceeding involving this instrument of said Will, nor limit any Beneficiary's appearance in any capacity in any proceeding solely for the construction of either of said documents.

The Grantor intends that the provisions of this Trust Agreement are to remain confidential as to all parties. The Grantor directs that only the information concerning the benefits paid to any particular Beneficiary shall be revealed to such individual and that no individual shall have the right to information concerning the benefits paid to any other Beneficiary.

The Grantor and Trustee of this Trust Agreement have agreed that alternative dispute resolution shall be utilized to preserve the total Trust Estate from the expenses of legal fees and litigation. For that reason, this Trust is subject to arbitration. The Trustee shall submit all disputes to arbitration and arbitration awards

shall be fully enforceable under the terms of state law and common law to the extent that are not inconsistent. Any controversy between the Trustee and any controversy between the Trustee and any other parties to this Trust, including Beneficiaries, shall, on the written request of any disagreeing party served on the other or others, be submitted to arbitration. The parties to such arbitration shall each appoint one person to hear and determine the dispute and, if they are unable to agree, then the persons so chosen shall select another impartial arbitrator whose decision shall be final and conclusive upon all parties. The cost of arbitration shall be borne by the losing party or parties, in such proportion as decided in arbitration proceeding. Such arbitration shall comply with the commercial Arbitration Rules of the American Arbitration Association.

In the alternative to the above, if any Beneficiary of the Trust hereunder, in any manner, directly or indirectly, contests or attacks any of these Trusts or any of the provisions hereof or the Will of Grantor or any provisions thereof or conspires to do so or fails to cooperate in good faith with the Trustee or Successor Trustee(s) and/or in the defense of any attack or contest, then any share or interest in the Trust Estate given to that contesting Beneficiary under this Instrument is revoked and such property shall be managed and distributed in the same manner provided herein as if that contesting Beneficiary had died without issue before the establishment of this Trust and before becoming entitled to receive any income or portion of the principal of the Trust Estate.

The Trustee is specifically authorized to defend, at the expense of the Trusts, any contest or attack of any nature upon these Trusts or any provision hereof. For the purpose of this paragraph, a request to a Court of competent jurisdiction for instruments or interpretation shall not be deemed to be a contest or attack upon any provision.

**Disinheritance.** Except as otherwise provided herein, the Grantor has intentionally omitted to provide for any other of his/her heirs living at the time of death.

**Mandatory Step Alternative Dispute Resolution Provision.** The Grantor binds and hereby requires any successor trustee, secondary beneficiary(s) or recipient(s) of a gift in the Bequeath of Special Gifts as a requirement of receiving any such inheritance, bequeathment and/or gift herefrom, that has any dispute, controversy, or claim arising out of, relating to, or in connection with this Trust Agreement, including with respect to the formation, applicability, breach, termination, validity or enforceability thereof, shall be first negotiated in good faith to attempt to come to a resolution. If no resolution is reached with thirty (30) days, then the above stated parties agree to mediate the dispute and if agreed to, submitting to resolve the matter in a binding game of chance if no resolution is reached in the mediation stage hereto agreed upon within one (1) day of the beginning of the mediation. If no agreement is reached in negotiation or mediation, the dispute is to be finally settled by binding arbitration. The arbitration shall be conducted by one arbitrator and shall be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules with State of Illinois law being the choice of law, if need be. The arbitration award shall be final and binding on the parties. jurisdiction over the relevant party or its assets.

A request by a party to a court of competent jurisdiction for interim measures necessary to preserve the party's rights, including pre-arbitration attachments or injunctions, shall not be deemed incompatible with, or a waiver of, this agreement to arbitrate. Either party has the right to apply to any court of competent jurisdiction for interim relief necessary to preserve the party's rights, including pre-arbitration attachments or injunctions, until the arbitrators are appointed. After appointment of the arbitrators, the arbitrators shall have exclusive jurisdiction to consider applications for interim relief. The arbitrator shall determine the scope of its own jurisdiction.

The parties, any arbitrator and their agents or representatives, shall keep confidential and not disclose to any non-party the existence of the arbitration, non-public materials and information provided in the arbitration by another party, and orders or awards made in the arbitration. All costs and expenses of the arbitrator and for the American Arbitration Association shall be borne by the parties equally; each party shall bear its own arbitration costs and expenses, including its legal fees and other costs of legal representation. The parties hereto expressly waive and forgo any right to punitive, exemplary or similar

damages as a result of any controversy or claim arising out of, relating to, or in connection with this agreement, or the breach, termination, or validity thereof.

*Definitions.*

A. As used herein, whenever the context so indicates, the masculine shall include the feminine and neuter and vice versa the singular shall include the plural and the plural shall include the singular.

B. Whenever provision is made in this Instrument for payment of the education of a Beneficiary, the term "education" shall be broadly defined to include, without limitation, college and postgraduate study at an institution of the Beneficiary's choice, any general or special course of study of academic, vocational or musical pursuit of the Beneficiary's choice (whether or not institutional); and in determining payments to be made for such education, the Trustee shall take into consideration the Beneficiary's related living expenses to the extent that they are reasonable.

C. Unless otherwise stated, any references to the "Code" are to the Internal Revenue Code of 1986, as amended.

## Termination

A. If at any time the fair market value of the principal of any Trust established hereunder has become so low in relation to the cost of administration thereof that continuance of the Trust pursuant to its existing terms would defeat or substantially impair the accomplishment of the purposes of the Trust, the Trustee may, with the approval of 100% of the Beneficiaries of such Trust, determine that the Trustee be changed, that the terms of the Trust be modified or that the Trust be terminated in full or in part. If the determination is that the Trust be terminated in full or in part the principal and undistributed income shall be distributed to the Beneficiaries in a manner that conforms as nearly as possible to the intention and purposes of the Trust.

B. Notwithstanding anything herein contained to the contrary, no Trust or Trusts created hereunder shall continue for a period longer than twenty-one (21) years after the death of the Grantor and the issue of Grantor living on the date of the last amendment to this Trust and any Trust or Trusts which do not otherwise terminate prior to that date under the terms and conditions hereof shall terminate on that date and thereupon Trustee shall distribute and deliver free and clear of any Trust the then balance of principal and accumulated net income of each separate Trust to the Beneficiary or Beneficiaries for whom such Trust was held at the termination date.

   1. In the event there are no such persons living at that date, then such assets shall be distributed in accordance with Paragraph V of the "Distributions to Secondary Beneficiaries" Section of this Instrument.

*Distribution to Minors.* In the event that any Beneficiary to whom a distribution is made is a minor, the Trustee is authorized in its absolute discretion, to name a custodian for such minor under the Act, as the same may be in effect, from time to time and to make any such distribution, in whole or in part, to such custodian to be held for and paid over to such minor under all terms of the said Act, as the same may be in effect from time to time.

*Period of Survivorship.* For purposes of this Trust, no person shall be deemed to have survived the Grantor unless it shall be established to the satisfaction of the Trustee that such person was living six (6) months following the date of the death of the Grantor.

## TRUSTEES' SIGNATURE

IN WITNESS WHEREOF, with the intentions to be legally bound hereby, the Trustees hereto have executed and delivered this Trust Declaration and Agreement.

_____     4/25/22
George V. LaVenture                           Date

## GRANTOR'S SIGNATURE

The undersigned Grantor certifies that he or she has read the foregoing Agreement and Declaration of Trust and that it correctly states the terms and conditions under which the Trust Estate is to be held, managed and disposed of by the Trustee. The undersigned Grantor approves of this Trust in all particulars and requests the Trustee(s) to execute it.

_____     4/25/22
George V. LaVenture                           Date

_____     _____
Witness                                       Witness

State of Illinois        )
                         ) ss.
County of Cook           )

On this date, _____4/25_____, 20 22, personally appeared before me, a notary public, George V. LaVenture, personally known by me or who have satisfactorily proved to me to be the signers of the above instrument and acknowledges that he/she executed the same.

My commission expires 7/08/22          _____
                       Date                              Notary Public

```
OFFICIAL SEAL
KATELYN LONG
Notary Public - State of Illinois
My Commission Expires 7/08/2022
```

## EXHIBIT NO. 1

## VOLUNTARY STATEMENT OF GRANTOR TO HEIRS AND BENEFICIARIES

I have given careful consideration to the Trustee and Successor Trustee choice for my Trust created herein. I have freely and voluntarily made the Trustee appointment and arrangement without inducement or pressure from anyone. I am voluntarily signing this statement, for this statement is not required in order to create this Trust. I ask you, my heirs and Beneficiaries of this Trust, to fully respect my wishes in this regard and ask you to refrain from any attempt to overturn my Trustee appointment if simply to meet your personal choices and desires. The Trust created herein will be funded with my assets, not those of yours, my heirs and Beneficiaries. So, I alone have the right to make the Trustee decision and my appointment under the law is due your full respect.

I have also given careful consideration as to who the Secondary Beneficiary(ies) are, the amounts each is to receive as a bequeathment, if any. If you, as a Secondary Beneficiary are not cooperative with the herein named Successor Trustee(s) for any reason, including but not limited to refusing to sign a release(s) and if such action by the uncooperative Beneficiary(ies) requires the Trustee or the Trustee's counsel to spend a disproportionate amount of time dealing with the uncooperative Beneficiary(ies), then it is my express intent that such uncooperative Beneficiary's share be reduced by an amount (up to the entire uncooperative Beneficiary's share) equal to the value of the disproportionate time spent on such uncooperative Beneficiary(ies), notwithstanding anything to the contrary contained herein.

A Beneficiary shall be deemed "uncooperative" if such Beneficiary's actions deviate from the actions of other Beneficiaries and cause a delay in the administration of the Trust.

In the alternative to the above, I allow that the uncooperative Secondary Beneficiary's share can be withheld in escrow until the uncooperative Secondary Beneficiary(ies) respects my wishes herein stated. The Successor Trustee(s) have the sole discretion to determine if a Secondary Beneficiary(ies) is uncooperative with the pursuits and plans of this Trust.

_____          4/25/22
George V. LaVenture                                          Date

**List Of Property Transferred To Trust**
**Schedule A**

I, the undersigned Grantor, George V. LaVenture, of Western Springs, Illinois, do hereby transfer, convey and assign, without consideration, all rights, title and interest in the property set forth below to the Trustee(s) of George V. LaVenture, a Trust dated April 5, 2022.

The above said transfer of the below listed real property includes all present and future interests of the undersigned, together with all present and future improvements thereon and all present and future water, water rights and mineral rights thereunto belonging and also including all present and all future personal property located thereon or whosesoever located, plus all policies of rife, liability, burglary and property damage and other insurance, on or in connection with the below listed real property. It is our intention to attach to this document the deeds that are necessary to convey said real property to said Trust, but failure to complete the deeds shall, in no way, impair this transfer.

The above said transfer of personal property includes all rights, title and interest in the property, together with all future additions, interests or accumulations, therein. The above said transfer of personal property includes all our personal property and household effects of every kind, including, but not limited to, furniture, fixtures, appliances, furnishings, pictures, antiques, silverware, china, glass, books, jewelry, furs, wearing apparel, automobiles, boats, mobile homes, recreational vehicles, guns, coin collections, stamp collections, tools, equipment, tax refunds, safe deposit boxes, club memberships, timeshare interests, intangibles, stocks, bonds, stock options, privately held corporate stocks, partnership interests, LLC units, plus all policies of fire, burglary and property damage and other insurance, on or in connection with the above named personal property or any other personal property which I now own or which I may own in the future, except for any items of personal property that may be transferred in other legal documents, such as a will or a disposition of personal effects.

_____
George V. LaVenture

State of Illinois          )
                           ) ss.
County of Cook             )

On this date, _____4|25_____ , 20 _22_ , personally appeared before me, a notary public, George V. LaVenture, personally known by me or who has satisfactorily proved to me to be the signer of the above instrument and acknowledged that he or she executed the same.

My commission expires _7|08|22_          _____
                          Date                              Notary Public

OFFICIAL SEAL
KATELYN LONG
Notary Public - State of Illinois
My Commission Expires 7/08/2022

Page 1 of 1

## AFFIDAVIT OF ATTESTING WITNESSES

State of Illinois        )
                         ) ss.
County of Cook           )

We, George V. LaVenture, _Angelika Rygula_ and
_Diane L Galante_ , the Grantor and attesting witnesses
respectively, whose names are signed in the foregoing instrument to which this affidavit is attached, on the
date it bears; being first duly sworn, so hereby declare to the undersigned officer that the Grantor signed the
instrument as the Grantor's Trust and that the Grantor signed willingly and as Grantor's free and voluntary
act for the purposes therein expressed; and that each of the witnesses, who are at the time 18 or more years
of age, in the presence and hearing of the Grantor, at Grantor's request and in the presence and hearing of
each other, signed the Trust as a witness and that to the best of the knowledge of each witness, the Grantor,
was at the time 18 or more years of age, of sound and disposing mind and memory and under no constraint
or undue influence.

We signed this Instrument at:
_650 E Devon Ave Ste 125 Itasca IL 60143_

_____        Residing at: 5345 Lawn Ave.
George V. LaVenture                              Western Springs, Illinois 60558

_____        Residing at: _368 Edlenshur_
Witness                                          _Itasca IL 60143_

_____        Residing at: _2W583 Lawrence_
Witness                                          _Roselle IL 60172_

On this date, _4/25_ , 20 _22_ , personally appeared before me, a notary
public, George V. LaVenture, _Angelika Rygula_ and
_Diane L Galante_ personally known by me or who has
satisfactorily proved to me to be the signers of the above instrument and acknowledges that he/she executed
the same.

My commission expires _7/08/22_        _____
                        Date                      Notary Public

OFFICIAL SEAL
KATELYN LONG
Notary Public - State of Illinois
My Commission Expires 7/08/2022

# Pour Over Will

## For

## George V. LaVenture

I, George V. LaVenture of Western Springs, Illinois, do hereby declare this is to be my last Will and Testament, and I revoke any earlier Will and Codicils.

## SECTION 1.   APPOINTMENT OF FIDUCIARY

I.      I appoint Brigitte Fauteux of North Granby, Connecticut, hereafter referred to as my "Fiduciary of this Will, and as the Personal Representative of my estate.  If my said person should fail or cease to serve for any reason at any time, I appoint Daniel Fauteaux of North Granby, Connecticut, to act as my Fiduciary instead.

II.     All of my Fiduciaries shall be exempt from giving or posting any bond or security.

III.    If the above-mentioned Fiduciary fails to serve for any reason at any time, a successor shall be appointed by an appropriate Court.  Every successor shall seek appointment and shall qualify according to the probate law.

IV.     My Fiduciary shall be as free and independent of Court supervision as the law of the appropriate jurisdiction shall allow.

V.      My Fiduciary may be compensated for any services at the then prevailing rates for similar services to estates and trusts of similar size.  Individual fiduciaries shall receive no compensation while serving as fiduciary unless they request compensation by written instrument, whereupon a reasonable compensation shall be paid.

VI.     My Fiduciary shall not be liable for any loss to my estate, or to any beneficiary, which results from good faith decisions in executing the powers herein granted.

## SECTION 2.  POWERS AND DUTIES OF FIDUCIARY AND TRUSTEES

I. It is my express intention by this Will, and the trust known as George V. LaVenture Trust, hereafter referred to as the Trust, dated 4/5/2022, to provide an integrated estate plan to settle my estate upon my death, and for this reason this Will and the Trust should be interpreted accordingly.  An important purpose of my estate plan is to avoid probate.  However, if there are substantial assets at my death which have not been conveyed to the Trust, and which must be probated to clear title, I direct that my Fiduciary and Trustees cooperate fully in the expeditious payment of debts, last illness and funeral expenses, taxes of any kind and other expenses of my estate in paying these in the following manner:

A.      Any expenses for my funeral or of administering my estate, shall be paid as far as possible from my residuary estate. Any amounts of such expenses which cannot be paid from the residuary estate shall be paid from the Trust, either directly or by the Trustee providing the funds to my Fiduciary.  The Trustee's decision shall be final on any disagreement which cannot otherwise be resolved between my Fiduciary and the Trustee of this matter.

B.      I direct that my Fiduciary and the Trustee shall cooperate in appointing any of my estate or death taxes between my residuary estate and my share of the Trust in the manner that produces the least taxation.  After creating the appointment with the most favorable tax result, I further direct that all death and/or estate taxes be divided equitably among the amounts or shares left to my heirs and/or Trust beneficiaries, including any survivor's share held in trust or otherwise.  Any taxes owed on Trust assets shall be paid from the Trust by the Trustee, either directly or by providing the fund to my Fiduciary.  Any taxes which are apportioned to the residuary estate but which cannot be reasonably or timely paid there from shall be paid by the Trustee, either directly or by providing the funds from the Trust by the Trustee to my Fiduciary.  The Trustee's decision shall be final on any disagreement which cannot otherwise be resolved between my Fiduciary and the Trustee on this matter.

Initials _____                                             Page 1 of 4

II. It shall be the responsibility of my Fiduciary to file any estate tax returns required by Federal or State law unless there is an agreement to the contrary between the Trustee and my Fiduciary regarding who shall file said returns.

III. If substantial assets of my estate are left out of the Trust and in my residuary estate, the payments and needs of Paragraph I of this Section shall be met before pouring over the remaining assets into the Trust, those assets in my estate which are to be disposed of by the provision of Section 5, of this Will. However, if there is any disagreement between my fiduciary and Trustee, the Trustee's wishes must prevail.

IV. With respect to the administration and management of my estate, my Fiduciary shall have the power and discretion as complete as I had over my property while living. In addition to powers and discretion conferred hereunder, and by law, my Fiduciary shall have the authority and power to take advantage of all tax savings which the laws of any jurisdiction allow, without regard to conflicting interests of those interested in my estate, and without making any adjustments among said persons. To that end, my Fiduciary may take any one or more of the following acts, as deemed advisable:

    A. To join with my spouse in executing joint income tax returns;

    B. To value my gross estate for Federal Estate Tax purposes as of the date of my death, or as of the alternative valuation date as allowed for such purposes;

    C. To claim as estate or death tax deductions, or both, expenses which would otherwise qualify as income tax deduction;

    D. To elect to have gifts by my spouse treated as made one-half by me for Federal Gift Tax purposes;

    E. To choose the methods by which to pay estate or death taxes;

    F. To disclaim any portion of any interest in property passing to my estate at or after my death; and

    G. To make any other elections allowed by the Internal Revenue Code or the tax laws of any state.

## SECTION 3. GOVERNING LAW

This Will shall be governed and construed under the laws of the State of Illinois.

## SECTION 4. SPECIFIC GIFTS

I. I intend to attach hereto or to my Trust a Memorandum of Disposition of Personal Effects. As specific bequests, I give those items of personal effects listed in said Memorandum to the individuals named therein. Said Memorandum may be changed by me from time to time. The Memorandum so attached at my death shall be binding and final. If said Memorandum is not attached hereto or with my Trust at the time of my death, and cannot be located after a reasonable search, no specific gifts shall be granted.

II. All assets, other than those in the Trust Memorandum of Disposition of Personal Effects and those assets that are refused by or cannot pass appropriately from the Trust Memorandum of Disposition of Personal Effects, shall pass in equal shares to the beneficiaries named in my Trust, as they shall agree. If my beneficiaries are unable to agree upon a division with sixty (60) days of my death, my Fiduciary shall divide the property among my surviving beneficiaries in substantially equal shares, as deemed practical in my Fiduciary's discretion, having due regard to the personal preferences of my beneficiaries, and without being required to achieve exact equality in monetary value.

III. Except as provided by law, my surviving beneficiaries shall have the use and possession of all the property in my estate during the period of administration of my estate, without bond.

IV. My Fiduciary shall represent any child under the age of eighteen (18) in matters relating to any distribution provided for in this Section of my Will, including selection of the asset that shall constitute that child's share. The

Initials _____                                        Page 2 of 4

decision of my fiduciary concerning selection of assets that shall constitute a child's share and concerning the desirability of sale of any part of a child's share, shall in all respects be binding on my heirs. Any property or its proceeds distributable to a child under age eighteen (18) may be delivered without bond to any suitable person with whom the child resides or to any person who has the care or custody of the child. The receipt from the person to whom such property or its proceeds is distributed shall be complete discharge of my Fiduciary.

## SECTION 5. POUR OVER RESIDUARY ESTATE TO TRUST

I. The term "residuary estate" used throughout this Will means all my interest in real and personal property, whether community or separate, and wherever situated, which I may own at my death, excluding property over which I may have a power of appointment, and which I have not disposed of by the preceding provisions of the Will. The Trust referred to in this Section is that certain Trust previously described in Section 2 of this Will.

II. I hereby, give, devise and bequeath my residuary estate to the Trustee or Trustees of the Trust. I direct that my residuary estate shall be held, administered, and distributed as part of the Trust according to the terms of the Trust, and any amendments made to it prior to my death. It is my intent, purpose and desire that my residuary estate shall be added to the principal of the Trust, and administered and distributed according to all the provisions, terms, and beneficial interests of the Trust that existed before my death. It is not my intention to create a separate or testamentary trust by this Will, or to subject the Trust, or the property added to it by this Will, to the jurisdiction of the Probate Court. It is my intention that the Trustee of the Trust shall receive my residuary estate, in his/her/its capacity as Trustee, under the Trust Agreement, with said Trust being a distinct legal entity already in existence at the time of execution of the Will. I expressly, by this Will, do not exercise any powers of appointment I may hold.

III. If, for any reason the pour-over disposition in this Section is not operative, or is invalid, or if the Trust fails, or has been revoked, then I give my residuary estate to the Trustee named in the present provisions of the Trust Agreement, to act after my death, to be held as a testamentary trust in the same manner and upon identical terms and provisions contained in the Trust Agreement, a copy of which is attached hereto, and by this reference made a part hereof. In the event it is necessary to incorporate the Trust Agreement by reference in this Will because of the Trust's nonexistence at the time of distribution of my estate, then it is my intention that the Trust Agreement be incorporated by reference as of the date of the execution of this Will, or of the last Codicil to this Will, and that no subsequent revocation or amendment of the Trust shall be incorporated by reference in this Will.

I am over the age of eighteen (18) years. I have initialed all of the pages of this Will and have signed it on _____4/25_____, 20 22 .


_____
George V. LaVenture


Initials _____                                    Page 3 of 4

The foregoing Will was, on the day and year written above, published and declared by George V. LaVenture in our presence to be his/her Will. We in his/her presence and at his/her request, and in the presence of each other, have attested the same and have signed our names as attesting witnesses and have initialed each page.

We declare that at the time of our attestation of this Will, George V. LaVenture was, according to our best knowledge and belief, of sound mind and memory and under no undue duress or constraint.

_____
Witness

_____
Address

_____
City, State, Zip Code

_____
Witness

_____
Address

_____
City, State, Zip Code

State of Illinois      )
                    ) ss.
County of Cook      )

Before me, the undersigned authority, on this day personally appeared George V. LaVenture, _____, and _____, known to me to be the Testator and the witnesses, respectively, whose names are signed to the foregoing instrument; and, all of these persons being by me first duly sworn, George V. LaVenture, the Testator, declared to me and to the witnesses in my presence that such instrument is his/her last will and testament and that he/she had willingly signed and executed it in the presence of such witnesses as his/her free and voluntary act for the purposes therein expressed, and such witnesses state before me that the foregoing will was executed and acknowledged by the Testator as his/her last will and testament in the presence of such witnesses who, in his/her presence and at his/her request, and in the presence of each other did subscribe their names thereto as attesting witnesses on the day of the date of such will, and that the Testator at the time of the execution of such will, was over the age of eighteen years and of sound and disposing mind and memory and under no constraint or undue influence.

My commission expires  7/08/22
                       Date

_____
Notary Public

```
OFFICIAL SEAL
KATELYN LONG
Notary Public - State of Illinois
My Commission Expires 7/08/2022
```

Initials _____

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF                    )
                                         )
GEORGE LaVENTURE,                        )
                                         )
    Petitioner/Counter-Respondent,       )
                                         )
    and                                  )   No.  2019 D 005759
                                         )
APRIL GLUECKERT-LaVENTURE,               )
                                         )
    Respondent/Counter-Petitioner.       )

**ENTERED**

**February 11, 2021**

Iris Y. Martinez
Clerk of the Circuit Court
of Cook County, IL

DEPUTY CLERK _____

## JUDGMENT OF DISSOLUTION OF MARRIAGE

THIS CAUSE coming on to be heard upon the stipulation of the parties to have this

matter heard as an uncontested prove-up upon the duly verified Petition for Dissolution of

Marriage of the Petitioner, GEORGE LAVENTURE, and the Response thereto of the

Respondent, APRIL GLUECKERT-LAVENTURE, with the Petitioner being present in open

Court and represented by his counsel, Stephen R. Botti, of the law firm of Botti Marinaccio, Ltd.,

the Respondent also being present in open Court and represented by her counsel, Thomas T.

Field of Beermann, LLP, the Court having heard the evidence adduced by the Petitioner in

support of his said Petition, and having heard argument of counsel and being fully advised in the

premises, DOTH FIND:

    1.   That the Court has jurisdiction of the subject matter and the parties hereto.

    2.   That the Petitioner is now and for more than ninety (90) days continuously and

immediately preceding the filing of Petitioner's Petition for Dissolution of Marriage and has

been domiciled in and an actual resident of Hinsdale, State of Illinois.

    3.   That GEORGE is fifty-one (51) years of age, resides in Hinsdale, Illinois and has so

resided in Illinois in excess of ninety (90) days prior to the date of filing of this Petition.

    4.   That APRIL is forty-four (44) years of age, resides in Hinsdale, Illinois.

1

5. That the parties were lawfully married on October 23, 2010 in Chicago, Illinois, and said marriage is registered in Cook County, State of Illinois.

6. April has two (2) children, one age 18 and one age 16 from a prior marriage, neither of the children are subject to the jurisdiction of this Court or part of this matter. To that end, no children were born to or adopted by the parties as a result of their marriage. Further, April is not now pregnant.

7. That GEORGE and APRIL have lived separate and apart for a continuous period of time and irreconcilable differences have caused the irretrievable breakdown of the parties' marriage. Efforts at reconciliation have failed and future efforts at reconciliation would be impracticable and not in the best interest of the family.

8. That the parties have been living separate and apart for a period in excess of six months.

9. That the parties have attempted to dispose and settle between themselves questions of maintenance, property rights and attorneys' fees by entering into a written Agreement, which Agreement is incorporated in this Judgment of Dissolution of Marriage by Reference only pursuant to 750 ILCS 5/502(d) and made a part hereof, which Agreement is not unconscionable as between the parties and of right and in justice ought to be enforced as between them.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, and this Court by virtue of the power and authority therein vested, and the Statute in such case made and provided, does ADJUDGE AND DECREE AS FOLLOWS:

A. That the parties are awarded a Judgment of Dissolution of Marriage.

B. That the Marital Settlement Agreement and all of its provisions are incorporated by reference only into and made a part of this Judgment of Dissolution of Marriage.

C. That the Petitioner and the Respondent are ORDERED, ADJUDGED, DECREED AND DIRECTED to execute and carry out all of the terms, provisions and conditions of this Judgment and of the said written Marital Settlement Agreement.

D. That each of the parties shall execute, acknowledge and deliver good and sufficient instruments necessary or proper to vest the titles and estates in the respective parties hereto as provided in the terms and provisions of this Judgment; and each of them shall thereafter at any time and from time to time execute, acknowledge and deliver any and all documents which may be necessary or proper to carry out the separate ownership of the several properties of said parties in the manner therein agreed and provided.

E. The Respondent/Counter-Petitioner, APRIL GLUECKERT-LAVENTURE, is granted leave to resume the use of her maiden name, APRIL GLUECKERT.

Dated: __February 11, 2021__          E N T E R

_____ /975
                                                     Judge

BOTTI MARINACCIO, LTD.
Attorneys for Petitioner
2015 Spring Road, Suite 370
Oak Brook, Illinois 60523
(630) 575 – 8585
Atty. No. 43504
office@bmltdlaw.com

3

*1975*

## MARITAL SETTLEMENT AGREEMENT

**THIS AGREEMENT** made and entered into this <u>11th</u> day of February 2021 by and between GEORGE LAVENTURE, hereinafter referred to as "Husband" or "George" and APRIL GLUECKERT-LAVENTURE, hereinafter referred to as "Wife" or "April".

## W I T N E S S E T H

A.     There is litigation pending between the parties in the Circuit Court of Cook County, Illinois (the "Court") pursuant to the Illinois Marriage and Dissolution of Marriage Act, under Case Number 19 D 5759. The case is entitled "In Re the Marriage of GEORGE LAVENTURE, Petitioner, and GLUECKERT-LAVENTURE, Respondent" (the "Case"). The Case remains pending and undetermined.   The Court has jurisdiction of the parties to and the subject matter of this cause.

B.     April, is 44 years of age, resides in Cook County, Illinois, and has resided in Illinois for more than 90 days immediately preceding the entry of Judgment in this matter. April is currently employed at Calumet Lumber, Inc.

C.     George, is 51 years of age, resides in Cook County, Illinois and has resided in Illinois for more than 90 days immediately preceding the entry of Judgment in this matter. George is currently employed by Prudential Insurance Company of America.

D.     The parties were married on October 23, 2010 in Chicago, Cook County, Illinois, where the marriage is registered.

E.     April has two (2) children, one age 18 and one age 16 from a prior marriage, neither of the children are subject to the jurisdiction of this Court or part of this matter. To that end, no children were born to or adopted by the parties as a result of their marriage. Further, April is not now pregnant.

F.     George was, at the time of the commencement of this action, a resident of the State of Illinois for more than 90 days immediately and continuously prior to the filing of this action, and such residence has been maintained to the present date. Likewise, April was, at the time of the commencement of this action, a resident of the State of Illinois for more than 90 days immediately and continuously prior to the filing of this action, and such residence has been maintained to the present date.

G.     Irreconcilable differences have caused the irretrievable breakdown of the marriage. Efforts at reconciliation have failed and future attempts at reconciliation would be impractical and not in the best interest of the parties.

H.     The parties have been separated since March 2019, thus for at least six months and have met the statutory separation requirement.

G.L.

AML

A.G-L.

I.     Without any collusion as to said proceedings and without any intent to obtain or stimulate a dissolution of marriage, the parties hereto consider it to be in their best interests to settle between themselves the issues arising out of said litigation including, but not limited to, maintenance, the allocation of marital property, attorneys' fees, and to forever, finally and fully settle and adjust between themselves the other rights growing out of the marital or any other relationship now or previously existing between them and to fully and finally settle any and all rights of every kind, nature and description which either of them now has or may hereafter have or claim to have against the other arising out of or relating to their marriage or any actions taken or not taken by the respective parties prior to the date of this Agreement, including all rights and claims in and to any property of the other, of every kind, nature and description, whether real, personal, marital, non-marital, or mixed, now owned or which may hereafter be acquired by either of them and further including all rights or claims in and to the estate of the other.

J.     April has employed and had the benefit of the counsel of Beermann LLP as her attorneys in these proceedings. George has employed and had the benefit of the counsel of Botti Marinaccio, Ltd. as his attorneys in these proceedings.

K.     Each of the parties has had the opportunity to receive the benefit of advice, investigation and recommendations with reference to the subject matter of this Agreement. The parties acknowledge that each has been fully informed as to the wealth, property, estate and income of the other, and that each has been either fully informed, or had the opportunity to be fully informed, of his and her respective rights and obligations in the premises, and that each is conversant with all of the property and income possessed by the other and the value thereof.

L.     Both parties have been advised of his or her right to conduct further discovery, including, but not limited to taking depositions, issuing subpoenas, serving document requests and matrimonial interrogatories, but both are satisfied with their current knowledge of each other's financial circumstances based upon the disclosures provided by the other, and their own separate knowledge, and both parties have instructed their counsel to waive such right on their own behalf, to do no additional discovery apart from that previously completed, and are waiving their right to engage in further discovery.

M.     Both parties are aware of their right to conclude this matter through a contested trial, but instead, they each acknowledge that they are satisfied with the settlement contained in this Agreement, and believe it to be fair and equitable.

N.     George and April are each aware of his and her individual right to have any or all issues determined in this Agreement decided by a judge. However, George and April are satisfied with the settlement that has been reached, believing same to be fair and equitable, and recognizing that the potential outcome at a trial may produce a greater or lesser result and outcome from that presently achieved.

O.     George and April expressly state that each is voluntarily entering into this Agreement free from duress or coercion and with full knowledge and understanding of each and every provision contained in this Agreement as well as the consequences thereof. After carefully



G.L.

AML

A.G-L.

considering the terms and provisions of this Agreement, each of the parties states that he or she believes that this Agreement is fair and reasonable and not unconscionable.

P.    Each party hereby represents to the other both now and when this Agreement was negotiated that:

(a) I had and have the ability to understand, execute and enter into this Agreement;

(b) I am not adversely affected by any psychiatric, psychological or medical condition; and

(c) I am not under the influence of any drugs, alcohol or medicine which would hinder or prevent my understanding of any provision of this Agreement; and

Accordingly, each party represents and warrants that:

1.    He or she has made a full and complete disclosure of his or her financial condition, and that he or she is fully informed of the wealth, property, estate, and income of the other;

2.    He or she has carefully reviewed the terms and provisions of this Agreement and has a full and complete understanding of the legal consequences thereof;

3.    He or she has entered into this Agreement freely and voluntarily, without imposition of force, duress, coercion, or undue influence from any source;

4.    The other party has made no representations or warranties as an inducement to enter into this Agreement, other than as set forth in writing within the terms and provisions of this Agreement; and

5.    The terms and provisions of this Agreement are fair and equitable to each of the parties in light of the respective and collective circumstances of the parties.

**NOW, THEREFORE,** in consideration of the mutual and several promises and undertakings contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties do freely and voluntarily agree to each and every term and provision set forth in this **MARITAL SETTLEMENT AGREEMENT.**

## ARTICLE I
## RESERVATION OF RIGHTS

1.1    This Agreement is not one to obtain or stimulate a Judgment of Dissolution of Marriage.

1.2    Each party reserves the right to prosecute or defend any action now pending or which may hereafter be brought for relief under the Illinois Marriage and Dissolution of Marriage Act.

G.L.

AML
A.G-L.

## ARTICLE II
## MAINTENANCE AND PARTIES' HEALTH INSURANCE

### MAINTENANCE WAIVER OF GEORGE.

2.1     George stipulates that he is capable of maintaining and supporting himself without contribution from April to provide for his reasonable needs and support, and agrees to waive, remise and release any and all claim or right of maintenance and support from April. In consideration for the other provisions herein, all right, claim and demand of George to past, present or future alimony, maintenance and support, temporary, permanent or otherwise, from April, is forever barred terminated and ended.

### AWARD OF MAINTENANCE TO APRIL

2.2     Commencing March 1, 2021, and continuing on the 1st of each month thereafter, George shall pay to April the sum of $7,000.00 per month as and for maintenance for a period of thirty (30) months. The herein amount of maintenance is a deviation downward based on the statutory formula set forth in 750 ILCS 5/504. The herein duration of maintenance is also a deviation downward compared to the full length of maintenance as calculated based on the formula set forth in 750 ILCS 5/504 based on the length of the parties' marriage as of the date of filing of this matter.

2.3.    The payments set forth in Paragraph 2.2 above shall terminate upon the first to occur of any of the following events:

　　　　　(a)     The death of April;

　　　　　(b)     The death of George;

　　　　　(c)     The civil union or remarriage of April, which shall be defined as the ceremony of a civil union or marriage regardless of whether that civil union or marriage is later annulled, declared invalid or dissolved;

　　　　　(d)     The cohabitation by April with a non-related person of the opposite sex on a resident, continuing conjugal basis;

　　　　　(e)     The expiration of the thirty (30) month period from the date of George's first monthly maintenance payment to April, so long as George has made all required payments.

2.4     The maintenance provided for under paragraph 2.2 above shall be paid directly from George to April via electronic transfer or other method specified by April into an account specified by April. April shall provide routing and account number for the account set to receive maintenance within 7 days of entry of Judgment.


G.L.

AML
A.G-L.

2.5    April shall be responsible for obtaining, maintaining, and paying for her health insurance and any and all health-related costs and insurance premiums for herself, without contribution from George. George shall cooperate fully with April to assist her in obtaining a conversion or continuation of any present existing health and hospitalization insurance policy under which she is covered to a separate policy issued on her behalf pursuant to the provisions of the Illinois Spousal Health Insurance Rights Act (SHIRA, 215 ILCS 5/356[d] and 5/367.2) and the Federal Health Insurance Continuation Legislation contained in the Consolidated Omnibus Reconciliation Act (COBRA, 29 USC Sec. 1161 *et seq.*). George shall cooperate in executing all documents necessary to obtain said conversion or continuation.

2.6    George currently has health insurance through his employer. He shall be responsible for maintaining and paying for his health insurance and any and all health-related costs and insurance premiums for himself, without contribution from April.

2.7    <u>Lien as Security for Maintenance</u>. George agrees that upon his death, April shall have a first and prior lien and encumbrance against all assets of George's estate as existed on the date of his death as and for security for George's maintenance obligation under this Article. Said lien and encumbrance shall be in the amount of any installments of maintenance due and owing as of the date of George's death. For example, if, at the time of George's death, there remains ten (10) installments of maintenance due and owing to April, April's lien and encumbrance against George's then existing assets shall be $70,000.00 (i.e. 10 x $7,000). In the event that April is required to enforce this lien and encumbrance, the parties agree that George's estate shall be responsible to pay for April's reasonable attorney's fees and costs in any such enforcement action. George's obligations pursuant to this paragraph shall terminate upon payment of the final installment of maintenance to April as set forth above.

## **ARTICLE III**
## **REAL PROPERTY**

3.1    <u>728 Cleveland Road, Hinsdale, Illinois</u>. The parties currently own and maintain real property, the former marital residence, commonly known as <u>728 Cleveland Road, Hinsdale, Illinois</u> ("Residence"), which property is titled solely in George's name. The parties agree and affirm that on or about November 27, 2020, the parties listed the Residence for sale and it is now set to close on February 12, 2021 at an agreed upon gross sale price of $1,900,000.00. Other than the primary mortgage, George warrants that there are no other liens, encumbrances, or clouds against the title to the Residence that did not appear of record at the time he took title to said property. During the time between entry of Judgement in this matter and the sale of the Residence, April shall have sole and exclusive possession of same. Effective upon the entry of the Judgement for Dissolution of Marriage in this matter, George shall pay and defray and be solely responsible for all outstanding liability on the property, including but not limited to mortgage, real estate taxes, insurance premiums utilities, and any other debt and/or expenses due and owing on said property and shall indemnify and hold April harmless with respect thereto. In the event that the sale of the

G.L.

AML
A.G-L.

Hinsdale Residence does not close on February 12, 2021, the parties agree that the Residence shall be listed for sale pursuant to the following terms:

      (a)    George shall have exclusive possession of the Hinsdale Residence and shall be responsible for all costs related to same.

      (b)    George shall be able to make all decisions relating to the listing and sale of the Hinsdale Residence, and April shall cooperate with the same.

      (c)    The parties agree that the commissions, closing costs, and all other customary expenses and deductions incurred in the sale of the Residence shall be allocated to the parties as follows: 63% to George and 37% to April. Upon the closing of the sale of the Residence, the parties shall divide the Net Proceeds of sale as follows: (i) the first $133,000 in Net Proceeds to George and (ii) the balance of the Net Proceeds split equally (50/50) between the parties. "Net Proceeds" shall be defined as the gross sale price less pay off of the mortgage, pro rations for real estate taxes, payment of the real estate broker's commissions, title charges, recording fees, attorneys' fees, real estate transfer taxes, any major repairs, and any other customary expenses incurred by reason of the sale of residential real estate. George shall tender to April her portion of the net proceeds within 7 days of closing on the sale of the Residence.

      (d)    An attorney mutually agreeable to both parties shall be used for all transactions in dealing with the sale of the marital residence.

      (e)    Until such time as the Residence is sold, George shall solely pay the mortgage, real estate taxes, insurance, utilities, and maintenance, including minor repairs, for the property. No major repairs (defined as repairs that cost more than $250) shall be made to the property unless recommended by the parties' realtor and mutually agreed to by the parties. If the realtor and the parties agree to a major repair to the marital residence, the cost for same shall be paid out of the net proceeds of sale prior to the parties' division of same.

    3.2    <u>31374 Currans Beach Road, Dowagiac, Michigan</u>. The parties currently own and maintain real property commonly known as <u>31374 Currans Beach Road, Dowagiac, Michigan</u> ("Michigan Residence"), which property is titled solely in George's name. George shall be awarded the Michigan Residence as his sole and separate property, free and clear of any right or claim of April. Other than the primary mortgage, the George warrants that there are no other liens, encumbrances, or clouds against the title to the Residence that did not appear of record at the time he took title to said property. Effective upon the entry of the Judgement for Dissolution of Marriage in this matter, George shall pay and defray and be solely responsible for all outstanding liability on the Michigan Residence, including but not limited to mortgage, real estate taxes, insurance premiums, utilities, and any other debt and/or expenses due and owing on said property and shall indemnify and hold April harmless with respect thereto.

G.L.

AML

A.G-L.

3.3    George and April have agreed to a lump sum payment to April of $50,000.00 as and for April's interest in the Michigan Residence. George shall pay said $50,000.00 to April from the portion of the Prudential Employee Savings Plan (PESP) and the Prudential Cash Balance Merged Retirement Plan ($25,000 from each Plan) via QDROs or letters of direction, whichever is applicable, as soon as administratively possible after entry of Judgment in this matter, but the parties shall cooperate to initiate the QDRO/Letter of Direction process within 30 days of judgment. To the extent a QDRO is needed, the parties shall equally (50/50) share in the cost of same. To the extent the QDRO processing fee is taken directly from George's portion of the plans, then April shall reimburse George for her one-half portion of the same.

## ARTICLE IV
## PERSONAL PROPERTY, VEHICLES AND OTHER MATTERS

4.1    <u>Personal Property.</u> The parties have reached a full agreement regarding the division of personal property, furniture, furnishings, electronics, and the like maintained within the Residence and the Michigan Residence, accordingly, all such personal property is already divided to the parties' satisfaction. In addition to the aforementioned, the parties shall each keep and be awarded his/her clothing, jewelry, and similar personal effects.

4.2    <u>Watercrafts and Related Equipment.</u> The parties presently maintain two (2) boats (one of which is encumbered by a loan), two (2) jets skis, and other related equipment (i.e. docs, boat lifts and trailers) at the Michigan Residence (hereinafter "Watercrafts and Related Equipment"). George shall be awarded the Watercrafts and Related Equipment as his sole and separate property, free and clear of any right or claim of April. Effective upon the entry of the Judgement for Dissolution of Marriage in this matter, George shall pay and defray and be solely responsible for all outstanding liability related to the Watercrafts and Related Equipment, including but not limited to debt payments, storage, and repairs and maintenance and shall indemnify and hold April harmless with respect thereto. George and April have agreed to a lump sum payment to April of $30,000.00 as and for April's interest in the Watercrafts and Related Equipment. George shall pay said $30,000.00 payment to April via Qualified Domestic Relations Order(s) or letter(s) of direction, whichever is applicable, entered against his Prudential Cash Balanced Merged retirement plan and Prudential Employee Savings Plan, ($15,000 from each Plan) as soon as administratively possible after entry of Judgment in this matter, but the parties shall cooperate to initiate the QDRO/Letter of Direction process within 30 days of judgment. George and his counsel shall be responsible to prepare said Qualified Domestic Relations Orders ("QDROs") or letters of direction. To the extent a QDRO is needed, the parties shall equally (50/50) share in the cost of same. To the extent the QDRO processing fee is taken directly from George's portion of the plans, then April shall reimburse George for her one-half portion of the same.

G.L.

AML

A.G-L.

## ARTICLE V
## BANK, INVESTMENT, AND RETIREMENT ACCOUNTS

5.1     Bank Accounts. George shall be awarded the Citibank checking (REDACTED, and Citibank savings (REDACTED accounts titled in solely in George's name. Additionally, April shall be awarded the entirety (100%) of the following bank accounts as her sole and separate property, free and clear of any interest of George:

(a)     Fifth Third Checking Account REDACTED

(b)     Fifth Third Savings Account REDACTED

(c)     Capital One Checking Account REDACTED

(d)     Capital One Savings Account REDACTED

(e)     Capital One 360 Savings Account REDACTED

(f)     Capital One 360 Savings Account REDACTED

(g)     Goldman Sachs Savings Account REDACTED

5.2     Brokerage Accounts. April shall be awarded $45,000.00 ($50,000.00 less a $5,000.00 credit to George for the advance to April for her rent) from LPL Financial Account (REDACTED as and for her interest in said account. George shall pay said $45,000.00 payment to April via Qualified Domestic Relations Order(s) or letter(s) of direction, whichever is applicable, entered against his Prudential Cash Balanced Merged retirement plan and Prudential Employee Savings Plan, ($22,500.00 from each Plan) as soon as administratively possible after entry of Judgment in this matter, but the parties shall cooperate to initiate the QDRO/Letter of Direction process within 30 days of judgment. George and his counsel shall be responsible to prepare said Qualified Domestic Relations Orders ("QDROs") or letters of direction. To the extent a QDRO is needed, the parties shall equally (50/50) share in the cost of same. To the extent the QDRO processing fee is taken directly from George's portion of the plans, then April shall reimburse George for her one-half portion of the same. Once George pays the aforementioned $45,000.00 to April as and for her interest in the LPL account, George shall be awarded the entirety (100%) of the following brokerage accounts as his sole and separate property, free and clear of any interest of April:

(a)     LPL Financial Account REDACTED

(b)     LPL Financial Account REDACTED

(c)     E-Trade/Prudential Stock Account REDACTED


G.L.

AML
A.G-L.

5.3     Retirement Accounts Awarded to April. April shall be awarded the entirety (100%) of the following retirement accounts as her sole and separate property, free and clear of any interest of George:

(a)     Franklin Templeton IRA REDACTED

(b)     ADP Butterfield 401(k)

(c)     HRS 401(k)

(d)     Wells Fargo Brookdale Senior Living 401(k)

(e)     IHT Woodbury IRA

5.4     Retirement Accounts Awarded to George. Subject to provisions elsewhere in this Agreement, George shall be awarded the entirety (100%) of the following retirement accounts as his sole and separate property, free and clear of any interest of April:

(a)     Prudential Annuity IRA REDACTED

(b)     SAI Woodbury IRA REDACTED

(c)     SAI Woodbury Roth IRA REDACTED

(d)     Prudential Deferred Compensation Plan REDACTED

(e)     Prudential Supplemental Employee Savings Plan

(f)     American Skandia Life Security Plan

(g)     Prudential Cash Balance Supplemental Retirement Plan

5.5     Prudential Cash Balance Merged Retirement Plan. April shall be awarded $358,601.93 from George's Prudential Cash Balance Merged Retirement Plan as and for her interest in said account. April shall receive said $381,101.93 (which includes one-half of the payment for April's interest in the Watercraft, the Michigan Residence, and the LPL x4167 account) in the form of an in-kind transfer of securities pursuant to a letter of direction as soon as administratively possible after the entry of Judgment in this matter, but the parties shall cooperate to initiate the QDRO/Letter of Direction process within 30 days of judgment. If such a transfer pursuant to a letter of direction is not allowed pursuant to the terms of the Prudential Cash Balance Merged Retirement Plan, the transfer shall be effectuated via Qualified Domestic Relations Order. Both George and April shall cooperate to immediately execute any and all paperwork required to effectuate said transfer. Other than the aforementioned payment of $381,101.93 to April , George shall be awarded the entirety (100%) of the Prudential Cash Balance Merged Retirement Plan as his sole and separate property, free and clear of any interest of April. To the extent a Qualified Domestic Relations Order is required, George and his counsel shall be responsible to prepare and

G.L.                                                                                                                     A.G-L.

pay for said Qualified Domestic Relations Order and the cost of same shall be shared equally (50/50) by the parties. To the extent a processing fee is taken directly George's portion of the plan, then April shall reimburse George for her one-half within 30 days.

   5.6   <u>Prudential Employee Savings Plan</u>. April shall be awarded $381,101.93 (which includes one-half of the payment for April's interest in the Watercraft, Michigan Residence and LPL x4167 account) from George's <u>Prudential Employee Savings Plan</u> as and for her interest in said account. April shall receive said $381,101.93 in the form of an in-kind transfer of securities pursuant to a letter of direction as soon as administratively possible after the entry of Judgment in this matter, but the parties shall cooperate to initiate the QDRO/Letter of Direction process within 30 days of judgment. If such a transfer pursuant to a letter of direction is not allowed pursuant to the terms of the <u>Prudential Employee Savings Plan</u>, the transfer shall be effectuated via Qualified Domestic Relations Order. Both George and April shall cooperate to immediately execute any and all paperwork required to effectuate said transfer. Other than the aforementioned payment of $381,101.93 to April, George shall be awarded the entirety (100%) of the <u>Prudential Employee Savings Plan</u> as his sole and separate property, free and clear of any interest of April. To the extent a Qualified Domestic Relations Order is required, George and his counsel shall be responsible to prepare for said Qualified Domestic Relations Order and the cost of same shall be shared equally (50/50) by the parties. To the extent a processing fee is taken directly George's portion of the plan, then April shall reimburse George for her one-half within 30 days.

**ARTICLE VI**
**CALUMET LUMBER**

   6.1   April is the owner of an 17.7% interest in an entity known as Calumet Lumber, Inc. (hereinafter "Calumet"). Neither party sought to value April's interest in Calumet and, as such, both parties waive their right to place a value on April's interest therein. April is hereby awarded 100% of her interest in Calumet as her sole and separate property, free and clear of any right, title, and interest of George.

**ARTICLE VII**
**ATTORNEYS' FEES AND COSTS**

   7.1   Within 7 days of entry of Judgment in this matter, George shall wire to the law firm of BEERMANN LLP the sum of $20,000.00 as and for his contribution to April's attorney's fees and costs in this matter. Other than said $20,000.00 payment and payments already advanced to the parties' respective attorneys throughout the pendency of this matter, which payments shall not be reallocated or readjusted, each party shall bear sole liability for the payment of his or her respective attorneys' fees and costs and each party shall indemnify and hold the other harmless with respect thereto. Each party has been advised of their rights to (a) itemized fee and cost statements; (b) a hearing as to the reasonableness and necessity of their attorney fees and costs; and (c) to hire separate counsel for representation in connection with the attorneys' fees and costs.

*GL*
G.L.

*AML*
A.G-L.

Each party acknowledges that they have received itemized statements for costs advanced and services rendered by their respective attorneys, that each is satisfied with the statements and the services rendered by them. Both parties waive their right to a hearing and separate counsel as to the issue of attorneys' fees.

7.2    The parties hereby stipulate that each waives any and all rights to file a Petition for Contribution from the other spouse as provided in Section 503(j) of the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/503(j).

7.3    April affirms her full and complete satisfaction respecting the legal representation provided and professional services rendered by Beermann LLP as her attorneys of record and with respect to the instant case including, without limitation, the subject matter, contents, and terms and provisions of this Agreement.

7.4    George affirms his full and complete satisfaction respecting the legal representation provided and professional services rendered by Botti Marinaccio, Ltd. as his attorneys of record and with respect to the instant case including, without limitation, the subject matter, contents, and terms and provisions of this Agreement.

## <u>ARTICLE VIII</u>
## <u>DEBTS & OBLIGATIONS</u>

8.1    Except as otherwise stated elsewhere in this Agreement, George and April agree that neither will hold the other liable for any portion of any debt that he/she has incurred in his/her respective name (such as credit cards, etc.).

8.2    George will bear sole liability for any debts which he has incurred, and will indemnify April and hold her harmless therefrom.

8.3    April will bear sole liability for any debts which she has incurred, and will indemnify George and hold him harmless therefrom.

8.4    Except as otherwise stated elsewhere in this Agreement, each party will pay and hold the other harmless and indemnify the other for any liability associated with any property he or she receives under this Agreement.

8.5    Other than as set forth herein, the parties represent that neither is aware of any joint credit card or other debt in the parties' joint names. In the event any joint credit card account or other joint debt is discovered by either party, it shall be closed immediately. In the event any joint credit card debt is discovered by either party, the party incurring said debt shall immediately pay the same and indemnify and hold the other party harmless from said debt. Except as otherwise provided for in this Agreement, each party shall be responsible for and save, defend, indemnify, and hold the other harmless with regard to all other outstanding bills and obligations incurred by the party.


G.L.

AML
A.G-L.

## ARTICLE IX
## APPLICABILITY OF SECTION 1041 OF INTERNAL REVENUE CODE

9.1     The parties hereby elect to have all transfers of property which are made pursuant to this Agreement treated for income tax purposes in accordance with the provisions of Section 1041 of the Internal Revenue Code as enacted on July 18, 1984.  Said section permits parties to divorce actions to transfer appreciated properties between them with no current taxation thereof as "taxable events," such transfers as are undertaken to be treated in the same manner as a "gift" between spouses.

9.2     The parties further agree to execute any and all other documents which may hereafter be required to effect said election.

## ARTICLE X
## INCOME TAXES

10.1     <u>2020 Tax Filing and Refund or Liability</u>.  The parties shall file joint Federal and State tax returns for the tax year 2020 which shall be prepared by an agreed upon tax preparer. George shall be solely responsible to pay for the tax preparation fees and costs related to any and all 2020 tax filings. The parties shall also equally (50/50) share in any and all tax refund, if, however, there is any tax due and owing, any and all such liability shall be paid by George. In the event there is a capital loss relative to the sale of the former marital residence in Hinsdale, the parties shall equally (50/50) share in and allocated any such capital loss.

10.2     <u>2021 Tax Year and Beyond.</u> The parties shall file separate individual federal and state income tax returns for the tax year 2021 and each year thereafter.  Each party shall be individually responsible for any refunds or penalties associated with his and her respective filings. Each party shall cooperate as necessary so that the preparer of said tax returns may prepare said tax returns in a timely manner. To the extent there are any credits or deductions relative to the Residence and/or Michigan Residence for the 2021 tax year, George shall be entitled to claim same.

10.3     Except as otherwise provided for in this Agreement and regarding the parties' previously filed income tax returns, the parties agree as follows:

(a) George represents and warrants to April that he has accurately reported all income and deductions and has paid all income taxes, state and federal, regarding his income and deductions on the joint tax returns heretofore filed by the parties; and in the event there is subsequently found to be taxes, penalties or interest due and owing with respect to his income or deductions, he will pay and indemnify April from any liability.

(b) April represents and warrants to George that she has accurately reported all income and deductions and has paid all income taxes, state and federal, regarding her income and deductions on the joint tax returns heretofore filed by the parties; and in the event there is subsequently found to be taxes, penalties or interest due and


G.L.

AML
A.G-L.

owing with respect to her income or deductions, she will pay and indemnify George from any liability.

(c) <u>Income Tax Audits</u>. George and April agree to cooperate with regard to any requirements of any income tax audits for returns filed during the years of their marriage. They further agree that any additional tax, penalties, interest, other expenses that may result from those audits will be paid by them in proportion to their income for that filing year.

(d) Should either party hereafter deem it necessary or advisable to file an amended federal or state tax return for any previous year or years, the other party agrees to execute such returns. The other party's agreement to execute is conditioned upon the party making the request providing the party making the request with a written agreement that any amended tax return the party is to file is accurate and correct. Further, the party seeking to file the amended return shall fully indemnify the other party with respect to any such return to the same extent and respect as any other joint tax return referred to in this paragraph or any subsections thereof.

## <u>ARTICLE XI</u>
## <u>MISCELLANEOUS</u>

11.1   Neither George nor April shall perform any act, directly or indirectly, that is deliberately calculated to exhaust, diminish or reduce the value of his or her holdings and assets in order to evade his or her obligations under this Agreement or otherwise reduce the value of his or her estate.

11.2   In the event either party shall willfully fail to duly perform his or her financial or other undertakings as required herein, as a result of which the other shall incur any expense, including attorneys' fees, to enforce the provisions and terms of this Agreement, said party shall indemnify and hold the other harmless for any such expense, including the payment of reasonable attorneys' fees and cost of enforcement of this Agreement.

11.3   The parties acknowledge that each has been fully informed as to the wealth, property, estate and income of the other and that each is conversant with all of the property and income possessed by the other and the value thereof.  Further, each party acknowledges that in addition to partial formal discovery, both parties also relied upon their personal knowledge of the wealth, property, estate and income of the other party.  Finally, each party acknowledges that he/she was informed by his/her attorney of their right to conduct discovery, understands and has elected to waive such right to conduct further and formal discovery.

11.4   This Agreement shall be constructed in accordance with the laws of the State of Illinois, entirely independent of the forum or political jurisdiction in which it may come up for construction or enforcement. If a court of competent jurisdiction at any time after entry of Judgment of Dissolution of Marriage holds that a portion of this Agreement is invalid, the remainder hereof shall not be affected thereby and shall continue in full force and effect. The parties agree that Illinois is the jurisdiction having the greatest interest in the subject matter of this

G.L.

AML

A.G.L.

Agreement, and that the same was prepared and executed in Illinois, and that all parties in interest were or are residents of the State of Illinois.

        11.5   <u>Failure to Disclose Asset/Liability</u>. This Agreement was made and entered into predicated upon the financial representations and disclosures made by each party, that as of the date of this Agreement, such party does not have any marital interest in any other assets other than those specifically set forth in this Agreement. In the event the court of competent jurisdiction subsequently determines that either party owned or otherwise possessed marital property not disclosed for which such disclosure was waived, the party owning such undisclosed property shall pay to the other, on demand, 50% of the value of the undisclosed property plus statutory interest. The value shall be determined as of the date of the Agreement or the date of the demand for payment, whichever is greater. In the event one of the parties is found by the Court to have willfully failed to disclose an asset, the non-disclosing party shall reimburse the other party for reasonable attorney fees and costs incurred by him or her in securing his or her share of the asset.

**ARTICLE XII**
**GENERAL PROVISIONS**

        12.1   <u>Confidentiality.</u> The parties agree that, for privacy purposes, this Agreement shall be incorporated by reference only into the parties' Judgment for Dissolution of Marriage. Neither party shall knowingly or intentionally disclose to any third party any information, obtained during the marriage, that they reasonably know to be confidential regarding the other party's business.

        12.2   Except as otherwise provided, each of the parties shall execute, acknowledge and deliver, upon the effective date of this Agreement, good and sufficient instruments necessary or proper to vest the titles and estates in the respective parties hereto, as hereinabove provided and, thereafter, at any time from time to time, to execute, acknowledge and deliver any and all documents which may be necessary or proper to carry out the purposes of this Agreement and to establish of record the sole and separate ownership of the several properties of said parties in the manner herein agreed and provided. If either party hereto for any reason shall fail or refuse to execute any such documents, then this Agreement shall, and it is hereby expressly declared to, constitute a full and present transfer, assignment and conveyance of all rights hereinabove designated to be transferred, assigned and conveyed and a full, present and effective relinquishment and waiver of all rights hereinabove designated to be relinquished and waived. To further implement the execution and delivery of any and all documents required for the transfer or real estate hereunder, the parties designate any Judge or Associate Judge of the Circuit Court of Cook County, Illinois, to execute and deliver any and all such documents in the place and stead of the party herein so obligated.

        12.3   <u>Waiver of Interest.</u> George and April agree to waive any inheritance rights he or she may have against the other party. To the fullest extent of the law permitted to do so, and except as herein otherwise provided, each of the parties does hereby forever relinquish, releases, waive and forever quit claim and grant to the other, his or her heirs, personal representatives and assigns, all rights of maintenance, alimony, dower, inheritance, descent, distribution, community interest

G.L.

AML
A.G-L.

and all other right, title, claim, interest and estate as Husband and Wife, widow or widower, by reason of the marital relationship existing between the parties hereto under any present or future law, or which he or she otherwise has or might have to be entitled to claim in, to or against the property and assets of the other estate of the other, real, personal or mixes, or his or her estate, whether now owned or hereafter in any manner acquired by the other party, whether in possession or in expectancy and whether vested or contingent, each party further covenants and agrees for himself or herself, his or her heirs, personal representatives and assigns, for the purpose of enforcing any rights or all rights relinquished under this Agreement; and each of the parties agrees that in the event any suit shall be commenced, this release, once pleaded, shall be and constitute a complete defense to any such claim or suit so instituted by either party hereto; and each of the parties further agree to execute, acknowledge and deliver at the request of the other party, or his or her heirs, personal representatives, grantees, devisees, or assigns, any or all deeds, releases or other instruments and further assurances as may be required or reasonably requested to effect or evidence such release, waiver, relinquishment or extinguishment  of such rights; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party to the other of the obligation on the party of the other to comply with the express provisions of this Agreement, or the right of either party under this Agreement.

12.4    Except as herein otherwise provided, each of the parties hereby waives and relinquishes all rights to act as administrator or administrator –With –The –Will Annexed of the estate of the other party, and each of the parties does further relinquish all right to inherit by intestate succession any of the property of which the other may die seized or possessed, or should either of the parties hereto die intestate, this Agreement shall operate as a relinquishment of all right of the surviving party hereafter to apply for Letters of Administration in any form, and the estate of such deceased party, in the same manner as though the parties hereto had never been married, each of the parties hereto, respectively, reserve the right to dispose, by testament or otherwise, of his or her respective property in any way that he or she may deem fit, without any restriction or limitation whatsoever, provided, however, that nothing herein contained shall operate or be constructed as a waiver or release by either party of the obligation of the other to comply with terms of this Agreement or the rights of either party under this Agreement.

12.5    The Court, upon the entry of the Judgment of Dissolution of Marriage, shall retain the right to enforce the provisions and terms of this Agreement, which Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, assigns, devisees and grantees of the parties hereto.

12.6    Except as hereinabove otherwise provided, all duties and obligations of the parties hereto arising out of or through any prior Court Order entered in the action presently pending between  the parties, shall terminate upon the effective date of this Agreement.

12.7    <u>Effective Date</u>. This Agreement shall become effective upon entry of a final Judgment for Dissolution of Marriage in the pending action.

**IN WITNESS WHEREOF,** the parties have set their hands and seals on the day and the date set forth hereinabove.

G.L.

A.G-L.

APPROVAL:

_____
**GEORGE LAVENTURE**

_____
**APRIL GLUECKERT-LAVENTURE**

**BEERMANN LLP**
Attorneys for April Glueckert-Laventure
ttfield@beermannlaw.com
jkrawetz@beermannlaw.com
161 N Clark St, Suite 3000
Chicago, IL 60601
(312) 621-9700
Attorney No. 80095

*G.L.*

**Page 16 of 16**

*AML*
A.G-L.

# EXHIBIT C



Adam J. Poteracki | Park Ridge
O: 847.698.9600 Ext. 2258
F: 847.698.9624
E: apoteracki@robbinsdimonte.com

October 4, 2022

**Via email to matilda.ellis@prudential.com**
Ms. Matilda Ellis
The Prudential Insurance Company of America
751 Broad Street
Newark, NJ 07102

     Re:    Estate of George LaVenture, deceased, Case No. 2022 P 006442
                Prudential Deferred Compensation Plan <sup>REDACTED</sup>

Dear Ms. Ellis:

I represent Brigitte Fauteux as nominated Executor of the estate of George LaVenture (the "Decedent"). Due to scheduling delays in the Circuit Court of Cook County, my client's Petition to Admit Will to Probate and for Letters Testamentary is scheduled for hearing on October 20, 2022.

My client has been made aware of recent efforts by the Decedent's ex-wife, April Glueckert-LaVenture ("April") to claim ownership of the above-referenced account following the Decedent's death. However, the Decedent and April entered into a Marital Settlement Agreement (the "Settlement Agreement") which was incorporated into a Judgment of Dissolution of Marriage entered by the Circuit Court of Cook County on February 11, 2021 and affects the ownership of the above-referenced account. A copy of the Marital Settlement Agreement is enclosed herewith for your reference. Pursuant to Section 5.4 of the Settlement Agreement, the Decedent was awarded the entirety of the above-referenced account "free and clear of any interest of April." As such, the Decedent's estate is the proper owner of the above-referenced account.

**Accordingly, I write to request that you place a hold on any distribution of the above-referenced account** until such time as letters of office have been issued in the Decedent's estate and any competing claims with respect to ownership of the above-referenced accounts has been resolved. Thank you for your prompt attention to the foregoing. Should you have any questions or require anything further, please contact the undersigned.

               Sincerely,

               ROBBINS DI MONTE, LTD.

               By:     _____
                     Adam J. Poteracki

Encl. – Settlement Agreement
AJP/ajp

Chicago | Park Ridge
180 North LaSalle Street, Suite 3300, Chicago, Illinois 60601
O: 312.782.9000 | F: 312.782.6690
216 West Higgins Road, Park Ridge, Illinois 60068
O: 847.698.9600 | F: 847-698-9623

robbinsdimonte.com

# EXHIBIT D



The Prudential Insurance Company of America
Human Resources – Corporate Compensation
751 Broad Street, 21st Floor
Newark, NJ 07102

November 15, 2022

Adam J. Poteracki, Esq.
Robbins DiMonte
216 West Higgins Rd.
Park Ridge, IL 60068
**SENT VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Dear Mr. Poteracki:

We are in receipt of your letter dated October 4, 2022, on behalf of Brigitte Fateaux, executor of the Estate of George LaVenture ("Estate"), regarding the decedent's account under The Prudential Insurance Company of America Deferred Compensation Plan ("DCP"). The DCP is designed to be (i) an employee benefit plan within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), and (ii) an unfunded plan maintained by The Prudential Insurance Company of America for a select group of management or highly compensated employees within the meaning of Sections 201, 301, and 401 of ERISA.

George LaVenture was a participant in the DCP. In 2011, Mr. LaVenture designated April LaVenture as his designated beneficiary under the DCP and made no change of beneficiary designation thereafter. We understand, however, that the Estate is making a competing claim to Mr. LaVenture's account under the Plan based upon language in a Property Settlement Agreement incorporated into a Judgment of Divorce. In light of the competing claims, the Plan Administrator of the DCP is not in a position at this time to make a determination as to the proper beneficiary of Mr. LaVenture's account under the DCP. Accordingly, we have placed a hold on Mr. LaVenture's account under the DCP.

You implied in your letter that the Estate would be attempting to resolve the competing claim situation with April LaVenture. Please advise whether progress has been made toward resolving this matter. If you can reach a resolution of this dispute with April LaVenture, we will require for George LaVenture's Estate and April LaVenture to execute our form settlement and release agreement before distributions are made from the DCP. If George LaVenture's Estate and April LaVenture do not notify us of a resolution within 30 days from the date of this letter, the Plan Administrator may be forced to file an Interpleader action with the proper court to resolve this issue. We will advise April LaVenture similarly.

1

Please note that Mr. LaVenture was also a participant under the American Skandia Life Assurance Corporate Lifestyle Security Plan ("Skandia Plan"), which is sponsored by The Prudential Insurance Company of America. The beneficiary there is neither the Estate nor April LaVenture. The Plan Administrator for the Skandia Plan plans to proceed in the normal course of business with payment of that account to the designated beneficiary.

Sincerely,

*Matilda Ellis*

Matilda Ellis
On behalf of the Plan Administrator for the DCP

2

# EXHIBIT E

 **Prudential**

The Prudential Insurance Company of America
Human Resources – Corporate Compensation
751 Broad Street, 21st Floor
Newark, NJ 07102

November 15, 2022

April LaVenture
34 S. Quincy St
Hinsdale, IL 60521
**SENT VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Dear Ms. LaVenture:

We have been notified of the death of George LaVenture. At the time of his death, you were named as the designated beneficiary of Mr. LaVenture's account under The Prudential Insurance Company of America Deferred Compensation Plan ("DCP"). We have, however, received a competing claim to Mr. LaVenture's account under the DCP from the Executor of Mr. LaVenture's Estate ("Estate"), based upon the language of a Property Settlement Agreement that was incorporated into a Judgment of Divorce, which the Estate argues establishes that you waived any right as a beneficiary to Mr. LaVenture's account under the DCP. In light of the competing claims, the Plan Administrator of the DCP is not in a position at this time to make a determination as to the proper beneficiary of Mr. LaVenture's account under the DCP. Accordingly, we have placed a restriction on this account.

It is our understanding that counsel for the Estate is Adam Poteracki, Esq. of Robbins DiMonte. If you can reach a resolution of this dispute with George LaVenture's Estate, we will require for you and George LaVenture's Estate to execute our form settlement and release agreement before distributions are made from the DCP. If you and George LaVenture's Estate do not notify us of a resolution within 30 days from the date of this letter, we may be forced to file an Interpleader action with the proper court to resolve this issue. We will advise counsel for the Estate similarly.

Sincerely,

*Matilda Ellis*

Matilda Ellis
On behalf of the Plan Administrator for the DCP