# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF    )
)
GEORGE LaVENTURE,    )
)
Petitioner/Counter-Respondent,    )
)
and    )    No.  2019 D 005759
)
APRIL GLUECKERT-LaVENTURE,    )
)
Respondent/Counter-Petitioner.    )

**ENTERED**

**February 11, 2021**

Iris Y. Martinez
Clerk of the Circuit Court
of Cook County, IL

DEPUTY CLERK _____

## JUDGMENT OF DISSOLUTION OF MARRIAGE

THIS CAUSE coming on to be heard upon the stipulation of the parties to have this matter heard as an uncontested prove-up upon the duly verified Petition for Dissolution of Marriage of the Petitioner, GEORGE LAVENTURE, and the Response thereto of the Respondent, APRIL GLUECKERT-LAVENTURE, with the Petitioner being present in open Court and represented by his counsel, Stephen R. Botti, of the law firm of Botti Marinaccio, Ltd., the Respondent also being present in open Court and represented by her counsel, Thomas T. Field of Beermann, LLP, the Court having heard the evidence adduced by the Petitioner in support of his said Petition, and having heard argument of counsel and being fully advised in the premises, DOTH FIND:

1. That the Court has jurisdiction of the subject matter and the parties hereto.

2. That the Petitioner is now and for more than ninety (90) days continuously and immediately preceding the filing of Petitioner's Petition for Dissolution of Marriage and has been domiciled in and an actual resident of Hinsdale, State of Illinois.

3. That GEORGE is fifty-one (51) years of age, resides in Hinsdale, Illinois and has so resided in Illinois in excess of ninety (90) days prior to the date of filing of this Petition.

4. That APRIL is forty-four (44) years of age, resides in Hinsdale, Illinois.

1

5. That the parties were lawfully married on October 23, 2010 in Chicago, Illinois, and said marriage is registered in Cook County, State of Illinois.

6. April has two (2) children, one age 18 and one age 16 from a prior marriage, neither of the children are subject to the jurisdiction of this Court or part of this matter. To that end, no children were born to or adopted by the parties as a result of their marriage. Further, April is not now pregnant.

7. That GEORGE and APRIL have lived separate and apart for a continuous period of time and irreconcilable differences have caused the irretrievable breakdown of the parties' marriage. Efforts at reconciliation have failed and future efforts at reconciliation would be impracticable and not in the best interest of the family.

8. That the parties have been living separate and apart for a period in excess of six months.

9. That the parties have attempted to dispose and settle between themselves questions of maintenance, property rights and attorneys' fees by entering into a written Agreement, which Agreement is incorporated in this Judgment of Dissolution of Marriage by Reference only pursuant to 750 ILCS 5/502(d) and made a part hereof, which Agreement is not unconscionable as between the parties and of right and in justice ought to be enforced as between them.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, and this Court by virtue of the power and authority therein vested, and the Statute in such case made and provided, does ADJUDGE AND DECREE AS FOLLOWS:

A. That the parties are awarded a Judgment of Dissolution of Marriage.

B. That the Marital Settlement Agreement and all of its provisions are incorporated by reference only into and made a part of this Judgment of Dissolution of Marriage.

C. That the Petitioner and the Respondent are ORDERED, ADJUDGED, DECREED AND DIRECTED to execute and carry out all of the terms, provisions and conditions of this Judgment and of the said written Marital Settlement Agreement.

D. That each of the parties shall execute, acknowledge and deliver good and sufficient instruments necessary or proper to vest the titles and estates in the respective parties hereto as provided in the terms and provisions of this Judgment; and each of them shall thereafter at any time and from time to time execute, acknowledge and deliver any and all documents which may be necessary or proper to carry out the separate ownership of the several properties of said parties in the manner therein agreed and provided.

E. The Respondent/Counter-Petitioner, APRIL GLUECKERT-LAVENTURE, is granted leave to resume the use of her maiden name, APRIL GLUECKERT.


Dated:  February 11, 2021                    ENTER

                                             _____ /1925
                                             Judge

BOTTI MARINACCIO, LTD.
Attorneys for Petitioner
2015 Spring Road, Suite 370
Oak Brook, Illinois 60523
(630) 575 – 8585
Atty. No. 43504
office@bmltdlaw.com

3

*8* *—1975*

## MARITAL SETTLEMENT AGREEMENT

**THIS AGREEMENT** made and entered into this 11th day of February 2021 by and between GEORGE LAVENTURE, hereinafter referred to as "Husband" or "George" and APRIL GLUECKERT-LAVENTURE, hereinafter referred to as "Wife" or "April".

## WITNESSETH

A.      There is litigation pending between the parties in the Circuit Court of Cook County, Illinois (the "Court") pursuant to the Illinois Marriage and Dissolution of Marriage Act, under Case Number 19 D 5759. The case is entitled "In Re the Marriage of GEORGE LAVENTURE, Petitioner, and GLUECKERT-LAVENTURE, Respondent" (the "Case"). The Case remains pending and undetermined.   The Court has jurisdiction of the parties to and the subject matter of this cause.

B.      April, is 44 years of age, resides in Cook County, Illinois, and has resided in Illinois for more than 90 days immediately preceding the entry of Judgment in this matter. April is currently employed at Calumet Lumber, Inc.

C.      George, is 51 years of age, resides in Cook County, Illinois and has resided in Illinois for more than 90 days immediately preceding the entry of Judgment in this matter. George is currently employed by Prudential Insurance Company of America.

D.      The parties were married on October 23, 2010 in Chicago, Cook County, Illinois, where the marriage is registered.

E.      April has two (2) children, one age 18 and one age 16 from a prior marriage, neither of the children are subject to the jurisdiction of this Court or part of this matter. To that end, no children were born to or adopted by the parties as a result of their marriage. Further, April is not now pregnant.

F.      George was, at the time of the commencement of this action, a resident of the State of Illinois for more than 90 days immediately and continuously prior to the filing of this action, and such residence has been maintained to the present date. Likewise, April was, at the time of the commencement of this action, a resident of the State of Illinois for more than 90 days immediately and continuously prior to the filing of this action, and such residence has been maintained to the present date.

G.      Irreconcilable differences have caused the irretrievable breakdown of the marriage. Efforts at reconciliation have failed and future attempts at reconciliation would be impractical and not in the best interest of the parties.

H.      The parties have been separated since March 2019, thus for at least six months and have met the statutory separation requirement.



G.L.

Page 1 of 16

AML

A.G-L.

considering the terms and provisions of this Agreement, each of the parties states that he or she believes that this Agreement is fair and reasonable and not unconscionable.

P.     Each party hereby represents to the other both now and when this Agreement was negotiated that:

(a) I had and have the ability to understand, execute and enter into this Agreement;

(b) I am not adversely affected by any psychiatric, psychological or medical condition; and

(c) I am not under the influence of any drugs, alcohol or medicine which would hinder or prevent my understanding of any provision of this Agreement; and

Accordingly, each party represents and warrants that:

1.     He or she has made a full and complete disclosure of his or her financial condition, and that he or she is fully informed of the wealth, property, estate, and income of the other;

2.     He or she has carefully reviewed the terms and provisions of this Agreement and has a full and complete understanding of the legal consequences thereof;

3.     He or she has entered into this Agreement freely and voluntarily, without imposition of force, duress, coercion, or undue influence from any source;

4.     The other party has made no representations or warranties as an inducement to enter into this Agreement, other than as set forth in writing within the terms and provisions of this Agreement; and

5.     The terms and provisions of this Agreement are fair and equitable to each of the parties in light of the respective and collective circumstances of the parties.

**NOW, THEREFORE,** in consideration of the mutual and several promises and undertakings contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties do freely and voluntarily agree to each and every term and provision set forth in this **MARITAL SETTLEMENT AGREEMENT.**

## ARTICLE I
## RESERVATION OF RIGHTS

1.1     This Agreement is not one to obtain or stimulate a Judgment of Dissolution of Marriage.

1.2     Each party reserves the right to prosecute or defend any action now pending or which may hereafter be brought for relief under the Illinois Marriage and Dissolution of Marriage Act.

_G.L._

G.L.

Page 3 of 16

AML

A.G-L.

2.5     April shall be responsible for obtaining, maintaining, and paying for her health insurance and any and all health-related costs and insurance premiums for herself, without contribution from George. George shall cooperate fully with April to assist her in obtaining a conversion or continuation of any present existing health and hospitalization insurance policy under which she is covered to a separate policy issued on her behalf pursuant to the provisions of the Illinois Spousal Health Insurance Rights Act (SHIRA, 215 ILCS 5/356[d] and 5/367.2) and the Federal Health Insurance Continuation Legislation contained in the Consolidated Omnibus Reconciliation Act (COBRA, 29 USC Sec. 1161 *et seq.*).  George shall cooperate in executing all documents necessary to obtain said conversion or continuation.

2.6     George currently has health insurance through his employer. He shall be responsible for maintaining and paying for his health insurance and any and all health-related costs and insurance premiums for himself, without contribution from April.

2.7     Lien as Security for Maintenance. George agrees that upon his death, April shall have a first and prior lien and encumbrance against all assets of George's estate as existed on the date of his death as and for security for George's maintenance obligation under this Article. Said lien and encumbrance shall be in the amount of any installments of maintenance due and owing as of the date of George's death. For example, if, at the time of George's death, there remains ten (10) installments of maintenance due and owing to April, April's lien and encumbrance against George's then existing assets shall be $70,000.00 (i.e. 10 x $7,000). In the event that April is required to enforce this lien and encumbrance, the parties agree that George's estate shall be responsible to pay for April's reasonable attorney's fees and costs in any such enforcement action. George's obligations pursuant to this paragraph shall terminate upon payment of the final installment of maintenance to April as set forth above.

## ARTICLE III
## REAL PROPERTY

3.1     728 Cleveland Road, Hinsdale, Illinois. The parties currently own and maintain real property, the former marital residence, commonly known as 728 Cleveland Road, Hinsdale, Illinois ("Residence"), which property is titled solely in George's name. The parties agree and affirm that on or about November 27, 2020, the parties listed the Residence for sale and it is now set to close on February 12, 2021 at an agreed upon gross sale price of $1,900,000.00. Other than the primary mortgage, George warrants that there are no other liens, encumbrances, or clouds against the title to the Residence that did not appear of record at the time he took title to said property. During the time between entry of Judgement in this matter and the sale of the Residence, April shall have sole and exclusive possession of same. Effective upon the entry of the Judgement for Dissolution of Marriage in this matter, George shall pay and defray and be solely responsible for all outstanding liability on the property, including but not limited to mortgage, real estate taxes, insurance premiums utilities, and any other debt and/or expenses due and owing on said property and shall indemnify and hold April harmless with respect thereto. In the event that the sale of the

G.L.

AML

A.G-L.

3.3    George and April have agreed to a lump sum payment to April of $50,000.00 as and for April's interest in the Michigan Residence. George shall pay said $50,000.00 to April from the portion of the Prudential Employee Savings Plan (PESP) and the Prudential Cash Balance Merged Retirement Plan ($25,000 from each Plan) via QDROs or letters of direction, whichever is applicable, as soon as administratively possible after entry of Judgment in this matter, but the parties shall cooperate to initiate the QDRO/Letter of Direction process within 30 days of judgment. To the extent a QDRO is needed, the parties shall equally (50/50) share in the cost of same. To the extent the QDRO processing fee is taken directly from George's portion of the plans, then April shall reimburse George for her one-half portion of the same.

## ARTICLE IV
## PERSONAL PROPERTY, VEHICLES AND OTHER MATTERS

4.1    Personal Property. The parties have reached a full agreement regarding the division of personal property, furniture, furnishings, electronics, and the like maintained within the Residence and the Michigan Residence, accordingly, all such personal property is already divided to the parties' satisfaction. In addition to the aforementioned, the parties shall each keep and be awarded his/her clothing, jewelry, and similar personal effects.

4.2    Watercrafts and Related Equipment. The parties presently maintain two (2) boats (one of which is encumbered by a loan), two (2) jets skis, and other related equipment (i.e. docs, boat lifts and trailers) at the Michigan Residence (hereinafter "Watercrafts and Related Equipment"). George shall be awarded the Watercrafts and Related Equipment as his sole and separate property, free and clear of any right or claim of April. Effective upon the entry of the Judgement for Dissolution of Marriage in this matter, George shall pay and defray and be solely responsible for all outstanding liability related to the Watercrafts and Related Equipment, including but not limited to debt payments, storage, and repairs and maintenance and shall indemnify and hold April harmless with respect thereto. George and April have agreed to a lump sum payment to April of $30,000.00 as and for April's interest in the Watercrafts and Related Equipment. George shall pay said $30,000.00 payment to April via Qualified Domestic Relations Order(s) or letter(s) of direction, whichever is applicable, entered against his Prudential Cash Balanced Merged retirement plan and Prudential Employee Savings Plan, ($15,000 from each Plan) as soon as administratively possible after entry of Judgment in this matter, but the parties shall cooperate to initiate the QDRO/Letter of Direction process within 30 days of judgment. George and his counsel shall be responsible to prepare said Qualified Domestic Relations Orders ("QDROs") or letters of direction. To the extent a QDRO is needed, the parties shall equally (50/50) share in the cost of same. To the extent the QDRO processing fee is taken directly from George's portion of the plans, then April shall reimburse George for her one-half portion of the same.

G.L.

AML
A.G-L.

5.3     Retirement Accounts Awarded to April. April shall be awarded the entirety (100%) of the following retirement accounts as her sole and separate property, free and clear of any interest of George:

     (a)     Franklin Templeton IRA x4392

     (b)     ADP Butterfield 401(k)

     (c)     HRS 401(k)

     (d)     Wells Fargo Brookdale Senior Living 401(k)

     (e)     IHT Woodbury IRA

5.4     Retirement Accounts Awarded to George. Subject to provisions elsewhere in this Agreement, George shall be awarded the entirety (100%) of the following retirement accounts as his sole and separate property, free and clear of any interest of April:

     (a)     Prudential Annuity IRA x0082

     (b)     SAI Woodbury IRA x1283

     (c)     SAI Woodbury Roth IRA x3972

     (d)     Prudential Deferred Compensation Plan x4482

     (e)     Prudential Supplemental Employee Savings Plan

     (f)     American Skandia Life Security Plan

     (g)     Prudential Cash Balance Supplemental Retirement Plan

5.5     Prudential Cash Balance Merged Retirement Plan. April shall be awarded $358,601.93 from George's Prudential Cash Balance Merged Retirement Plan as and for her interest in said account. April shall receive said $381,101.93  (which includes one-half of the payment for April's interest in the Watercraft, the Michigan Residence, and the LPL x4167 account) in the form of an in-kind transfer of securities pursuant to a letter of direction as soon as administratively possible after the entry of Judgment in this matter, but the parties shall cooperate to initiate the QDRO/Letter of Direction process within 30 days of judgment. If such a transfer pursuant to a letter of direction is not allowed pursuant to the terms of the Prudential Cash Balance Merged Retirement Plan, the transfer shall be effectuated via Qualified Domestic Relations Order. Both George and April shall cooperate to immediately execute any and all paperwork required to effectuate said transfer. Other than the aforementioned payment of $381,101.93 to April , George shall be awarded the entirety (100%) of the Prudential Cash Balance Merged Retirement Plan as his sole and separate property, free and clear of any interest of April. To the extent a Qualified Domestic Relations Order is required, George and his counsel shall be responsible to prepare and

G.L.

AML

A.G-L.

Each party acknowledges that they have received itemized statements for costs advanced and services rendered by their respective attorneys, that each is satisfied with the statements and the services rendered by them. Both parties waive their right to a hearing and separate counsel as to the issue of attorneys' fees.

7.2     The parties hereby stipulate that each waives any and all rights to file a Petition for Contribution from the other spouse as provided in Section 503(j) of the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/503(j).

7.3     April affirms her full and complete satisfaction respecting the legal representation provided and professional services rendered by Beermann LLP as her attorneys of record and with respect to the instant case including, without limitation, the subject matter, contents, and terms and provisions of this Agreement.

7.4     George affirms his full and complete satisfaction respecting the legal representation provided and professional services rendered by Botti Marinaccio, Ltd. as his attorneys of record and with respect to the instant case including, without limitation, the subject matter, contents, and terms and provisions of this Agreement.

## ARTICLE VIII
## DEBTS & OBLIGATIONS

8.1     Except as otherwise stated elsewhere in this Agreement, George and April agree that neither will hold the other liable for any portion of any debt that he/she has incurred in his/her respective name (such as credit cards, etc.).

8.2     George will bear sole liability for any debts which he has incurred, and will indemnify April and hold her harmless therefrom.

8.3     April will bear sole liability for any debts which she has incurred, and will indemnify George and hold him harmless therefrom.

8.4     Except as otherwise stated elsewhere in this Agreement, each party will pay and hold the other harmless and indemnify the other for any liability associated with any property he or she receives under this Agreement.

8.5     Other than as set forth herein, the parties represent that neither is aware of any joint credit card or other debt in the parties' joint names. In the event any joint credit card account or other joint debt is discovered by either party, it shall be closed immediately. In the event any joint credit card debt is discovered by either party, the party incurring said debt shall immediately pay the same and indemnify and hold the other party harmless from said debt. Except as otherwise provided for in this Agreement, each party shall be responsible for and save, defend, indemnify, and hold the other harmless with regard to all other outstanding bills and obligations incurred by the party.


G.L.

Page 11 of 16

AML
A.G-L.

owing with respect to her income or deductions, she will pay and indemnify George from any liability.

(c) <u>Income Tax Audits</u>. George and April agree to cooperate with regard to any requirements of any income tax audits for returns filed during the years of their marriage. They further agree that any additional tax, penalties, interest, other expenses that may result from those audits will be paid by them in proportion to their income for that filing year.

(d) Should either party hereafter deem it necessary or advisable to file an amended federal or state tax return for any previous year or years, the other party agrees to execute such returns. The other party's agreement to execute is conditioned upon the party making the request providing the party making the request with a written agreement that any amended tax return the party is to file is accurate and correct. Further, the party seeking to file the amended return shall fully indemnify the other party with respect to any such return to the same extent and respect as any other joint tax return referred to in this paragraph or any subsections thereof.

## ARTICLE XI
## MISCELLANEOUS

11.1    Neither George nor April shall perform any act, directly or indirectly, that is deliberately calculated to exhaust, diminish or reduce the value of his or her holdings and assets in order to evade his or her obligations under this Agreement or otherwise reduce the value of his or her estate.

11.2    In the event either party shall willfully fail to duly perform his or her financial or other undertakings as required herein, as a result of which the other shall incur any expense, including attorneys' fees, to enforce the provisions and terms of this Agreement, said party shall indemnify and hold the other harmless for any such expense, including the payment of reasonable attorneys' fees and cost of enforcement of this Agreement.

11.3    The parties acknowledge that each has been fully informed as to the wealth, property, estate and income of the other and that each is conversant with all of the property and income possessed by the other and the value thereof. Further, each party acknowledges that in addition to partial formal discovery, both parties also relied upon their personal knowledge of the wealth, property, estate and income of the other party. Finally, each party acknowledges that he/she was informed by his/her attorney of their right to conduct discovery, understands and has elected to waive such right to conduct further and formal discovery.

11.4    This Agreement shall be constructed in accordance with the laws of the State of Illinois, entirely independent of the forum or political jurisdiction in which it may come up for construction or enforcement. If a court of competent jurisdiction at any time after entry of Judgment of Dissolution of Marriage holds that a portion of this Agreement is invalid, the remainder hereof shall not be affected thereby and shall continue in full force and effect. The parties agree that Illinois is the jurisdiction having the greatest interest in the subject matter of this

_G.L._

_G.L._

AML

A.G-L.

and all other right, title, claim, interest and estate as Husband and Wife, widow or widower, by reason of the marital relationship existing between the parties hereto under any present or future law, or which he or she otherwise has or might have to be entitled to claim in, to or against the property and assets of the other estate of the other, real, personal or mixes, or his or her estate, whether now owned or hereafter in any manner acquired by the other party, whether in possession or in expectancy and whether vested or contingent, each party further covenants and agrees for himself or herself, his or her heirs, personal representatives and assigns, for the purpose of enforcing any rights or all rights relinquished under this Agreement; and each of the parties agrees that in the event any suit shall be commenced, this release, once pleaded, shall be and constitute a complete defense to any such claim or suit so instituted by either party hereto; and each of the parties further agree to execute, acknowledge and deliver at the request of the other party, or his or her heirs, personal representatives, grantees, devisees, or assigns, any or all deeds, releases or other instruments and further assurances as may be required or reasonably requested to effect or evidence such release, waiver, relinquishment or extinguishment of such rights; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party to the other of the obligation on the party of the other to comply with the express provisions of this Agreement, or the right of either party under this Agreement.

12.4   Except as herein otherwise provided, each of the parties hereby waives and relinquishes all rights to act as administrator or administrator –With –The –Will Annexed of the estate of the other party, and each of the parties does further relinquish all right to inherit by intestate succession any of the property of which the other may die seized or possessed, or should either of the parties hereto die intestate, this Agreement shall operate as a relinquishment of all right of the surviving party hereafter to apply for Letters of Administration in any form, and the estate of such deceased party, in the same manner as though the parties hereto had never been married, each of the parties hereto, respectively, reserve the right to dispose, by testament or otherwise, of his or her respective property in any way that he or she may deem fit, without any restriction or limitation whatsoever, provided, however, that nothing herein contained shall operate or be constructed as a waiver or release by either party of the obligation of the other to comply with terms of this Agreement or the rights of either party under this Agreement.

12.5   The Court, upon the entry of the Judgment of Dissolution of Marriage, shall retain the right to enforce the provisions and terms of this Agreement, which Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, assigns, devisees and grantees of the parties hereto.

12.6   Except as hereinabove otherwise provided, all duties and obligations of the parties hereto arising out of or through any prior Court Order entered in the action presently pending between the parties, shall terminate upon the effective date of this Agreement.

12.7   Effective Date. This Agreement shall become effective upon entry of a final Judgment for Dissolution of Marriage in the pending action.

IN WITNESS WHEREOF, the parties have set their hands and seals on the day and the date set forth hereinabove.

Page 15 of 16

G.L.

AML

A.G-L.