## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COMMITTEE, AS PLAN ADMINISTRATOR OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA DEFERRED COMPENSATION PLAIN and THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>    Plaintiffs,<br><br>v.<br><br>APRIL LaVENTURE and BRIGITTE FAUTEUX, IN HER CAPACITY AS INDEPENDENT EXECUTOR OF THE ESTATE OF GEORGE V. LaVENTURE,<br><br>    Defendants<br><br>BRIGITTE FATEUX,<br><br>    Cross-Plaintiff<br><br>v.<br><br>APRIL LaVENTURE<br><br>    Cross-Defendant | ) ) ) ) ) No. 23-cv-902 ) ) ) ) The Hon. Steven C. ) Seeger, Judge Presiding ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

### MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS CROSSCLAIM AGAINST APRIL LAVENTURE

Cross-Defendant, April Laventure through her attorneys, Beermann LLP, submits the following Memorandum of Law in support of her motion to dismiss *Bridgette Fauteux's Fed R. Civ. P. 13(g) Crossclaim Against April Laventure* (the "Crossclaim" or "CC")

    I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

This is, or at least should be, a simple dispute between rival claimants to an account previously owned by the late George LaVenture and administered by the Prudential plaintiffs. Those plaintiffs properly deposited the disputed account with

the Court leaving the real parties in interest—George's former wife, who remained its named beneficiary at the time of his death, and the administrator of his estate—to fight over those funds.

Rather than simply seeking a declaration of it rights to the account, the Estate ties itself in knots advancing convoluted and untenable legal theories in an apparent attempt not only to obtain the funds at issue, but to justify an award of attorneys' fees. As set forth below, this Court should reject its efforts, as its four crossclaims all fail as a matter of law:

- First, the Estate impermissibly seeks April's specific performance under the LaVenture Marital Settlement Agreement where it possesses an obvious legal remedy and in the absence of clearly defined contractual terms (Count I);

- Second, the Estate impermissibly claims April's breach of that same Marital Settlement Agreement where it fails to identify any explicit provision with which she has failed to comply (Count II);

- Third, the Estate impermissibly seeks to register a state court divorce judgment under a statute which was enacted with the specific purpose of *excluding* such judgments from federal registration (Count III); and

- Fourth, the Estate impermissibly seeks to hold April in indirect civil contempt where this Court cannot punish violations of a judgment of another court and the Estate cannot identify a specific provision with which April failed to comply (Count IV).

## II.  UNDISPUTED MATERIAL FACTS

1. April and George LaVenture were previously married. *CC ¶ 7*.

2. During George's lifetime, and during his marriage to April, George designated April as the beneficiary of a deferred compensation plan administered by the Prudential plaintiffs (the "Plan"). *Dkt. No. 29-3*.

3. George did not remove April as beneficiary of the Plan following their

2021 divorce. *Id.; CC¶8.*

4. April remained the sole beneficiary of the Plan at the time of George's death in June 2022. *Id.; CC ¶10.*

5. On February 11, 2021 the Circuit Court of Cook County Illinois entered a Judgment dissolving George and April's marriage, which Judgment incorporated a written Marital Settlement Agreement (the "MSA"). *Dkt. 29-1.*

6. Relevant for purposes of this Motion, the parties agreed that George would be awarded 100% of the Plan "free and clear of any interest of April." *Dkt. 29-1, p. 9/12, ¶5.4.*

7. They further agreed that in the event either party "willfully fail[ed] to duly perform his or her financial or other undertakings, as required herein, … said party shall indemnify and hold the other harmless for any such expense, including the payment of reasonable attorneys' fees and cost of enforcement of this Agreement." *Dkt. 29-1, p. 11-12, ¶11.2.*

8. In what appears to be paragraph 12.3 of their MSA, George and April agreed, in part, as follows:[1]

---

[1] The Estate attaches George and April's divorce Judgment and MSA both as **Exhibit A** and as **Exhibit F** to its Crossclaim. *Dkt 29-1; 29-6*. While the MSA purports to be 16 pages in length, the Estate has only supplied this Court with the odd-numbered pages.

> and all other right, title, claim, interest and estate as Husband and Wife, widow or widower, by reason of the marital relationship existing between the parties hereto under any present or future law, or which he or she otherwise has or might have to be entitled to claim in, to or against the property and assets of the other estate of the other, real, personal or mixes, or his or her estate, whether now owned or hereafter in any manner acquired by the other party, whether in possession or in expectancy and whether vested or contingent, each party further covenants and agrees for himself or herself, his or her heirs, personal representatives and assigns, for the purpose of enforcing any rights or all rights relinquished under this Agreement; and each of the parties agrees that in the event any suit shall be commenced, this release, once pleaded, shall be and constitute a complete defense to any such claim or suit so instituted by either party hereto; and each of the parties further agree to execute, acknowledge and deliver at the request of the other party, or his or her heirs, personal representatives, grantees, devisees, or assigns, any or all deeds, releases or other instruments and further assurances as may be required or reasonably requested to effect or evidence such release, waiver, relinquishment or extinguishment of such rights; provided, however, that nothing herein contained shall operate or be construed as a waiver or release by either party to the other of the obligation on the party of the other to comply with the express provisions of this Agreement, or the right of either party under this Agreement.

9. The MSA makes no mention of beneficiary designations and does not require either party to execute any documents or take any actions to remove his or herself as beneficiary of an account owned by the other.

10. On July 18, 2023, the Estate filed its Crossclaim, asserting four counts against April for (i) specific performance; (ii) breach of contract; (iii) registration of the Judgment; and (iv) a finding of April's indirect civil contempt.

### III. STANDARDS FOR DISMISSAL UNDER RULE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] plaintiff seeking to survive a motion to dismiss must "plead some facts that suggest a right to relief that is beyond the speculative level." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). "[O]n a motion to dismiss, courts

are not bound to accept as true a legal conclusion couched as a factual allegation. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (citations omitted). "[A]n exhibit to the complaint is deemed to be part of the complaint itself, so it is fair game on a motion to dismiss." *Pittsfield Dev., LLC v. Travelers Indem. Co.*, 542 F. Supp. 3d 791, 798 (N.D. Ill. 2021).

## IV. DISCUSSION

### A. The Estate Fails to State a Claim for Specific Performance (Count I).

In Count I of the Crossclaim, the Estate asks this Court to order April's specific performance under paragraph 12.2 of the MSA—a paragraph not found in the truncated exhibit to its Crossclaim—and require April "to execute a document, deemed appropriate by the Court, assigning any interest she may have in the Plan to [the Estate], or a document stating that April has no interest in [the Plan] and that she is not entitled to the same." *CC¶34*. If this Court is wondering where such language occurs in the MSA, it is not alone, as such language does not exist, rendering an award of specific performance wholly inappropriate here.

The MSA provides it shall be constructed in accordance with the laws of the State of Illinois. *Dkt. 29-1, page 11-12, ¶11.4*. Under Illinois law, specific performance will not be ordered unless a court first determines "that the terms of the subject contract are clear, definite and unequivocal." *McCormick Rd. Associates, L.P. II v. Taub*, 659 N.E. 2d 52, 54 (Ill. App. 1995). In the specific performance context, Illinois "law requires a greater deal of specificity than is demanded for other

purposes…Specific performance requires as a prerequisite a clear and precise understanding of the terms of the contract." *Cinman v. Reliance Federal Savings & Loan Association*, 508 N.E.2d 239, 244 (Ill. App. 1987).

This Court need look no further than the incomplete language of the MSA and the Estate's own allegations to ascertain that there is no "clear and precise" obligation here warranting specific performance. The Estate fails to identify any clause in the MSA requiring April's execution of any of the myriad documents they reference relinquishing her rights as beneficiary to Plan. Instead, it points to broad (and incomplete) general language requiring collaboration to divide marital assets post-Judgment. None of the language cited speaks to beneficiary designations, much less obligates either party to execute documents voluntarily renouncing his or her rights as a beneficiary post-divorce.

The Estate does not even attach such documents to its Crossclaim. If the Estate was so confident in April's contractual obligation to execute documents, it stands to reason those documents would be part of its pleading. They are not. The fact that the Estate itself cannot make up its own mind—it proposes several documents for April to execute, apparently of the belief that any one of which would suffice to meet its needs—dispels any notions that the MSA possesses the level of requisite clarity to justify the relief sought.

This lack of clarity is not the only infirmity in Count I. Specific performance is an equitable remedy, one available only where remedies at law are insufficient. *Daniels v. Anderson*, 642 N.E.2d 128 (Ill. 1994). In other words, this Court can only

order specific performance where monetary damages will not make a plaintiff whole. *Id.*

While the Estate summarily states it "has no adequate remedy at law" *CC¶33*, the entire purpose of its Crossclaim is to obtain a fixed sum of money currently on deposit with the Clerk of this Court. It is difficult to imagine a more sufficient remedy at law here. Unlike a distinct property like real estate, which possesses individuality, the funds at issue here lack unique attributes. As such, there is no justification to award George's Estate specific performance. Count I of its Crossclaim is insufficient as a matter of law and should be dismissed.

### B. The Estate Fails to State a Claim for Breach of the Marital Settlement Agreement (Count II).

In Count II of its Crossclaim, the Estate pleads, in the alternative, that April breached the terms of the MSA by seeking to enforce her designation as the named beneficiary of the Plan following George's death. For many of the same reasons articulated above, the Estate's breach of contract claim must fail because, once again, it cannot actually point to a contractual provision which April violated.

A necessary and obvious prerequisite for a breach of contract is a valid and enforceable contract. *New v. Verizon Commc'ns, Inc.*, 635 F.Supp.2d 773, 782–83 (N.D. Ill. 2008). As in the case of specific performance, Illinois courts will not sustain a breach of contract claim where "the contract's material terms are too indefinite," and will not fill in the missing terms. *Babbitt Municipalities, Inc. v. Health Care Service Corp.*, 64 N.E.3d 1178 (Ill. App. 2016); *Set Envtl., Inc. v. Power Cartage, Inc.*, 2022 IL App (1st) 211403, ¶ 29.

Here, as with its specific performance claim, the Estate fails to identify any explicit clause of the MSA nullifying George's designation of April as the beneficiary of the Plan. Nor does it identify any provision requiring April to renounce that designation following George's death. Finally, it does not identify a single act or omission by April which violated these non-existent provisions. In the absence of an affirmative prohibition on April's receipt of funds from an account on which she remained the named beneficiary years after the parties' divorce, the Estate's breach of contract claim must fail.

George named April as the beneficiary of the Plan, and upon his death, April simply acted in accordance with that designation. The Estate's entire argument presupposes the invalidity of that designation, and seeks to impose non-existent contractual obligations upon April based upon its flawed conclusion.

According to the Estate, the MSA (the provisions of which are missing from its exhibits) required April to "transfer, assign, and convey all rights in and to the Plan to George." *CC¶40.* Of course, one cannot convey a beneficiary designation, and the Estate does not identify a single provision of the MSA mentioning such designations, much less obligating April to voluntarily renounce her entitlement to the Plan proceeds, as its named beneficiary. In the absence of any clear contractual language, it is impossible to construe her actions as a violation of the MSA's terms.

### C.  The Estate Impermissibly Seeks Registration of a State Court Divorce Judgment (Count III).

In Count III, the estate seeks registration of George and April's divorce Judgment pursuant to 28 U.S.C. §1963, a statute which permits district courts to

register a "judgment in an action for the recovery of money or property." While the estate summarily concludes that the divorce Judgment "was entered in an action that involved, in part, the recovery of money or property" (*CC¶49*), this conclusion stands in contrast to settled law.

As the legislative history to section 1963 makes clear, it was amended, in 1947, specifically to *exclude* state court divorce judgments from registration:

> the phrase 'for the recovery of money or property' was not in the committee's draft of rule 77 of the Federal Rules of Civil Procedure but was ***inserted in the revised section to exclude judgments in divorce actions***, and any other actions, the registration of which would serve no useful purpose. (Emphasis added.)
> Volume 8, of House Report No. 308, on Revision of Title 28, United States Code, 80th Congress, 1st Session, 1947.

While no Court in this Circuit has addressed this precise issue, every other federal court to have considered the question of whether section 1963 applies to divorce judgments has answered the question in the negative. See *Gitlin v. Gitlin*, 15 F.R.D. 458, 459 (E.D.N.Y. 1954) (denying registration of divorce judgment); *Stiller v. Hardman*, 324 F.2d 626, 627 (2d Cir. 1963) ("The insertion of the critical phrase 'for the recovery of money or property' was explained in the Reviser's Note as intended 'to exclude judgments in divorce actions"). This Court should not be the first to buck this trend. In the absence of any authority allowing registration of state court divorce judgments, and in the face of clear legislative intent to the contrary, Count III of the Crossclaim should be denied.

### D. The Estate Cannot Seek a Finding of Contempt Based Upon a Purported Violation of the MSA (Count IV).

In Count IV of its Crossclaim, the estate asks this Court not only to hold April in indirect civil contempt, but to award it attorneys fees pursuant to the Illinois Marriage and Dissolution of Marriage Act, based upon her purported failure "to take the action necessary to transfer, assign, and convey all rights in and to the Plan to the estate." *CC¶60*. This argument, like those which preceded it, necessarily fails because, once again, the Estate cannot point to a clear obligation with which April fails to comply.

"Generally, civil contempt occurs when a party fails to do something ordered by the trial court, resulting in the loss of a benefit or advantage to the opposing party." *Cetera v. DiFilippo*, 934 N.E.2d 506 (Ill. App. 2010). Much like claims for specific performance or breach of contract, a finding of indirect civil contempt requires a clear and unambiguous order that has been violated by the party in question. *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir.1986). To sustain such a finding, the order at issue must be "so specific and clear as to be susceptible of only one interpretation." *O'Leary v. Allphin*, 356 N.E.2d 551 (Ill. 1976). "It must not only be capable of reasonable interpretation, but that interpretation must be to the exclusion of other reasonable interpretations; it must be unambiguous." *O'Grady v. Cook County Sheriff's Merit Board*, 561 N.E.2d 1226 (1990).

At the risk of being repetitive, there is no such language here. Nothing in the truncated MSA the Estate seeks to enforce requires April to disavow, renounce, or take *unspecified* actions "necessary to transfer, assign, and convey" her rights as

beneficiary—as opposed to George's former spouse—to his Estate. Again, the fact that the Estate cannot pinpoint what, precisely, April is supposed to do should dispel any notions of contempt. If it cannot identify a clear and unambiguous mandate, April cannot be held in contempt.

Lack of clarity aside, the Estate's contempt claim has another problem: it seeks to enforce a state court's orders using this Court's contempt powers. This is impermissible, as it is well settled that a Court's contempt powers are limited to enforcing its *own* orders. See *Johlar Indus., Inc. v. Essex Eng'g Co., Inc.*, 87 C 9013, 1988 WL 71222, at *2 (N.D. Ill. June 30, 1988) ("Johlar, however, seeks to hold Essex in contempt of an order that does not have its origin in this court. Since the order came from the United States District Court for the Eastern District of New York, jurisdiction lies there, not here."). See also *Young v. United States ex rel. Vuitton et Fils,* 481 U.S. 787, 107 S.Ct 2124, 2135 n. 10 ("the court has jurisdiction in a contempt proceeding only over those particular persons whose legal obligations result from their earlier participation in proceedings before the court"); 17 C.J.S. *Contempt* §§ 51 ("the power to judge a contempt rests exclusively with the court contemned, and that no court is authorized to punish a contempt against another court"). Insofar as this Court did not enter George and April's divorce judgment, or approve of their marital settlement agreement, it cannot, as a matter of law, hold April in civil contempt for alleged violations of its (non-existent) terms.

### E. The Estate is Not Entitled to an Award of Attorneys' Fees.

In Counts I, II, and IV of its Crossclaim, in addition to seeking enforcement of non-existent contractual obligations, the Estate asks this Court to enter an award of attorneys' fees in its favor. It should decline to do so.

As noted above, rather than seeking a straightforward declaratory judgment, the Estate proceeds under convoluted and untenable enforcement theories in a transparent attempt to shoehorn this case with paragraph 11.2 of the MSA, which authorizes awards of attorneys' fees where either party "willfully fails to duly perform his or her financial or other undertakings" under that document. *Dkt. 29-1, p. 11-12, ¶11.2*. Here, of course, the Estate fails to point to a single provision requiring the specific performance it claims April was supposed to undertake, or one with which April failed to comply. While the MSA allocated George and April's marital assets and liabilities and dissolved their marriage, it did not, under even the most charitable readings, prohibit either from remaining beneficiaries to the other's accounts *following their divorce*. April's status as beneficiary of the Plan simply falls outside the four corners of the MSA. Her "failure" to take the unspecific actions and sign the unspecific documents the Estate references, but does not attach, does not constitute a failure to perform an obligation under the MSA because nothing in that document references these things.

Equally unavailing is the Estate's request for attorneys' fees pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act, which authorizes awards of fees (i) only after a finding that a party's "failure to comply with

the order or judgment was without compelling cause or justification," or (ii) a party precipitates or conducts a hearing "under this Act" for an improper purpose. 750 ILCS 5/508(b); *CC ¶62*. The Estate cannot satisfy either prong here. Not only has it failed to identify a provision of the MSA with which April has not complied, and not only has this Court not made any determination of unjustified noncompliance, but these federal interpleader proceedings plainly are not proceedings "under this [Illinois Marriage and Dissolution of Marriage] Act." The Estate's requests for fees must fail, as well.

## V. CONCLUSION

For the foregoing reasons, Counts I, II, III, and IV of the Estate's Crossclaim should be dismissed. The MSA does not explicitly mandate April to waive her beneficiary rights to the Prudential Plan. Absent a provision in the MSA specifically imposing such an obligation on April, there is no foundation to claim a violation or breach of the agreement, specific performance, or civil contempt.

WHEREFORE, Cross-Defendant, APRIL LaVENTURE, respectfully requests that this Court enter an Order dismissing Counts I, II, III, and IV of the Estate's Crossclaim and granting her such other relief as it deems just and proper.

    Respectfully Submitted,

    By: /s/ *Matthew D. Elster*
    One of April's Attorneys

    **BEERMANN LLP**
    161 North Clark Street #3000
    Chicago, Illinois 60601
    312.621.9700
    mdelster@beermannlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of September, 2023, a copy of the foregoing ***Memorandum in Support of Motion to Dismiss*** was filed via the court's CM/ECF system, which will send electronic notice to all counsel of record who have appeared in this case.

/s/ *Matthew D. Elster*
